UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT IN OHIO

**2:23 CV 2 2 2 4**

ITZIK PELED,

              Plaintiff,

    Against

**JUDGE MARBLEY**

YAEL PELED, SHLOMO SHTASMAN, ANAT BARON,
NAFTALI SHILO, YARIV LEVIN, STATE OF ISRAEL,
ANTHONY BLINKEN and THOMAS R. NIDES,

              Defendants.

**MAGISTRATE JUDGE JOLSON**

Plaintiff Itzik Peled hereby complaints and pleads as follows:

**Preliminary Statement**

1.  Plaintiff and Defendant Yael Peled lived in Ohio as a married couple and raised 3 children born and raised in USA  In Dec. 2020 Yael lured Plaintiff into Israel with the children for a family visit. 17 days after arriving there, she disappeared with the children and kidnapped them.  She obtained a no exit order that forbade Plaintiff from leaving Israel for 22 months, thus rendering him a hostage in Israel with no home, no work and all his businesses in Ohio collapsing.  She tricked Plaintiff into negotiating a temporary visits agreement with the children and then claimed that the consent to see the abducted children is acquiescence to the abduction.

2.  Plaintiff managed to exit Israel on about 10/20/2022 by way of an escape.  In the 7 months prior to the escape, he was forbidden from seeing or contacting his children.  His parental rights were revoked by Def. Shtasman.  He is completely alienated from his children and being threatened with several lawsuits in the Rabbinical court and family court of Tel Aviv, Israel, which are all premised on the false concept that the abduction was "acquiesced to", and that the children are now residents of Israel, as if their entire past life in Ohio was, as if their entire past life in Ohio was erased and wiped out. Defendant Shtasman revoked Plaintiff's parental rights.

3.  Plaintiff argues that the period of the duration of the no exit prohibition in Israel from 1/14/2021 until 10/20/2022 tolls the state of limitations on launching a Hague Convention case in the USA, and therefore this complaint is timely and within one year of the abduction (excluding the tolled period).  Therefore, plaintiff is seeking remedies in connection with the

abduction (non- recognition of any order or judgment originating from Israel), granting full custody and rights to collect child support, sanctions for every week Defendant continues to prosecute her extortionist lawsuits in Israel and not retuning the children to their Ohio home, and damages from her aiders and abettors, including the State officers who helped her.

4. Defendant Yael took advantage of a jurisdiction that ostensibly discriminates against men, where a powerful extortion tool is available to Israeli women, which is a twisted interpretation of the Hague Convention on the Abduction of Children according to which if a father is negotiating with a woman the interim visitations while the abduction is pending, the father automatically loses the availability of the Hague Convention and is deemed acquiescing to the abduction.

5. Another powerful tool is the availability of a no exit order against men (and never against women) and that is in addition to an entire set of laws and case laws which discriminate against men, both statutorily and in practice. In fact, the reputation of Israel as a paradise for divorced women is known all over the world, and even the UN Civil Rights - Economic Social and Cultural rights' Committee rebuked Israel twice for its discrimination against men and demanded that steps be taken to amend the laws and to bring them at par with other democratic societies.

6. This background of gender apartheid against men explains the Israeli supreme Court's affirmation of the District Court's ruling on appeal that the Hague Convention does not apply and that the children should not return to Israel. Plaintiff seeks a declaratory judgment that these rulings are not to be recognized in the USA and instead it should be decided de novo that the Defendant Yael is an abductor, that custody should be placed in Plaintiff and that Defendant pay child support and weekly sanctions.

**The Parties**

7. Plaintiff Itzik Peled is a citizen of the US and a resident of Ohio. Plaintiff married defendant Yael Peled, who is also a US citizen (born and raised here) and a resident of Ohio in 2013 and had 3 children with her who grew up as Americans in Ohio. Defendant Yael Peled abducted the children to Israel. Prior to the abduction trip Plaintiff worked as a locksmith. Plaintiff is the father of Maya Peled born 12/7/2015 (5/8 years old when

2

abducted), Denielle Peled born 11/2/2017 (4 years old when abducted) and Tom Peled 5/25/2018 (3 years old when abducted).

8.    Defendant Yael was born in the USA, married Plaintiff in the USA and is a citizen of the USA and as of the abduction a resident and citizen of Israel.  Defendant Peled tricked Plaintiff into booking innocently a short trip to Israel, with the children, however she planned in advance to launch a divorce in Israel, using the most draconian, extortionist and brutal legal tools available to women in Israel, the notorious no exit order.  She works as a paralegal.  Her address is at Fisher Bachar Law Office, 39 Hazohar Street, Tel Aviv, Israel.

9.    Defendant SHLOMO SHTASMAN is a Rabbi working as a Dayan (religious judge) in the Tel Aviv Rabbinical Court.  He is devoted to the radical feminist ideology.  He is the one who issued the no exit order on Plaintiff, and threatened his life and that of his family. His address is 33 David Hamelech Street, Tel Aviv, Israel.

10. Defendant ANAT BARON is a Supreme Court Judge in Israel.  She is devoted to the radical feminist ideology.  She issued hundreds of judgments reeking of discrimination against men.  Her goal is to impoverish men, alienate them from the children and transfer all the men's assets to the hands of women "to compensate for the wrongs of the patriarchy.  She is the Judge who false approved the Judgment of Naftali Shilo that Plaintiff acquiesced to the abduction of his children. Her address is 1 Kiryat Hamemshala Street, Bet Mishpat Elyon, Jerusalem, Israel.

11. Defendant NAFTALI SHILO is devoted to the radical feminist ideology. He is devoted to the radical feminist ideology.  Shilo issued hundreds of judgments reeking of discrimination against men.  Her goal is to impoverish men, alienate them from the children and transfer all the men's assets to the hands of women "to compensate for the wrongs of the patriarchy.  He is the Judge who overturned the Judgment of Judge Iris Ilutovich at the city court of Tel Aviv, Israel and found that Plaintiff's children were indeed abducted, and because of him the children now remain in Israel despite being abducted.    His address is 562 Hageffen Street Efrata, Israel.

3

12. Defendant YARIV LEVIN, is the Minister of Justice in Israel. As such he is vested with the powers to amend the statutory scheme and case laws that blatantly discriminate between men and women. His address is 27 Dam Hamakabim Street, Modiin, Israel.

13. Defendant STATE OF ISRAEL's address is at Ministry of Justice Central Authority, 29 Tzalach A Din Street, Jerusalem, Israel.

14. Defendant ANTHONY BLINKEN is the US Secretary of State. He is sued both in his official and individual capacity. His address is 950 Pennsylvania Avenue, N.W. Office of the Attorney General, Washington, D.C. 20530.

15. Defendant THOMAS R. NIDES is the ambassador of the USA to Israel in Tel Aviv. He is devoted to the radical feminist ideology. He hosts the most radical feminists' lobbies in events of the embassy and supports them. He instructed the embassy and Consulate not to give any consular and diplomatic support to any American citizen who is trapped in Israel and cannot return home. In addition, he sends reports to Washington completely ignoring the hundreds of Americans who seek his help every year. His address is 71 Ha'Yarkon Street, 63903 Tel Aviv, Israel. Tel. (011-972-3) 519-7588. Email: AgTelAviv@usda.gov. At all times relevant hereto he acted in concert with the other Defendants and under color of state law. He is sued both in his official and individual capacity.

**The remedies sought**

16. Plaintiff seeks the following damages:

a. To rule that Defendant Yael Peled abducted the children on 1/5/2021 without permission or justification and to rule the entire period of the Plaintiff's involuntary stay in Israel under the extortionist injunction of a no exit orders tools the one-year statute of limitations of the Convention.

b. To rule that the Plaintiff is the sole custodian of the 3 children and is entitled to child support from the Defendant as of the date Plaintiff first filed proceedings in Ohio State court, 02/16/2021.

c. To issue an anti-suit order forbidding the defendant from prosecuting in Israel (currently before the Honorable Judge Iris Ilutovich) any claims of child support temporary and/or permanent and to order that if the Defendant proceeds in Israel before Judge Ilutovich for child support, she should pay a contempt fine of $100 per day and escalating over a

gradual period, and that in any event any outcome of proceedings in child support originating from Israel will be unenforceable in the US and not entitled to comity, reciprocity or full faith and credit recognition.

    d.  To issue an anti-suit order forbidding the defendant from prosecuting any claims for a religious divorce in Israel or any ancillary claims in the ecclesiastical/rabbinical courts of the State of Israel, (currently before the rabbi defendant Shtasman), and order that if the Defendant proceeds in Israel before rabbinical Judges ("Dayanim") she should pay a contempt fine of $100 and escalating over a gradual period, and that in any event any outcome of proceedings in child support originating from Israel will be unenforceable in the US and not entitled to comity, reciprocity or full faith and credit.

    e.  To order Yael Peled, Shtasman, the State of Israel and Defendants Anat Baron and Naftali Shilo to compensate Plaintiff in the sum of $5,000,000 for the extortionist illegal confinement detainer of the Plaintiff in Israel against his will and against his freedoms and liberties to travel and to earn a living from 10/1/2021 and until 1/1/9999 to cover all attorney costs and the cost of rescue from Israel.

    f.  To order the USA Defendants Blinken and Nides on behalf of USA to cease reciprocation with Israel pursuant to the Memorandum of Understanding on mutual recognition of child support because the courts of Israel do not adhere to equal protection, they blatantly discriminate against men, that the men are not afforded Due Process and Fair trial and that the entire proceedings is conducted in an extortionist/ mafioso measures in a way that either holds the men's body as collateral, or if the men is overseas, he is threatened that if he does not travel to Israel and surrenders his body to be placed under lien of the no exit, then he will be deemed as "no appearance, all his property will be transferred to his wife, and he will lose contact with his children forever.

    g.  To order the USA Defendants Blinken and Nides on behalf of USA to use all diplomatic channels, including sanctions against the State of Israel for violating American citizens' rights, not giving a fair trial and subjecting them to discrimination, confinement, no exit, impoverishment and alienation from children,

    h.  To order the USA Defendants Blinken and Nides on behalf of USA To suspend any negotiations with the State of Israel about waiver of "visa in advance" requirement for entry of Israeli citizens into the USA until it amends all family law and brings them at par to internationally accepted norms of rights, liberties, equal protection and due process.

    i.  order the USA Defendants Blinken and Nides on behalf of USA to adopt measures for intervention in judicial cases where American citizens are trapped in Israel.

<u>Jurisdiction and venue</u>

17. This Court has subject matter jurisdiction over this action, pursuant to The International Child Abduction Remedies Act ("ICARA") is the United States' implementing legislation for the Hague Convention. 42 U.S.C. § 11601 *et seq.* (1988), and also 28 U.S.C. § 1331, because it presents a Federal question under FLSA (29 U.S.C. § 206), and also pursuant to RICO (18 U.S.C. §1962), and Mail and Wire Fraud (18 U.S.C. §§1341, 1343). This Court also has supplemental jurisdiction over the Plaintiffs' common law claims pursuant to 28 U.S.C. Sec 1367 and for crimes against humanity, discrimination based on sex against *jus cogens* and the laws of all nations, and against federal officials pursuant to Bivens under 28 U.S.C. §§ 1331 and 1343. Also, as to state law under 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over the Defendants because the Plaintiff resides in Ohio, defendant Yael Peled and the children resided in Ohio before the abduction and Ohio was the situs of the marital life. There is also a house in Ohio (that suffered water damages in Plaintiff's absence) which Defendants calculate their actions to let Defendant Yael claim ownership in full by seeking to enforce orders obtained in Israel by way of extortion, entrapment, confinement and violation of fair trial and equal protection.

19. Venue is Proper in the District of Ohio pursuant to 28 U.S.C. § 1391(b). The Defendants directed their actions and calculated their extortionist scheme towards property of the Defendant in Columbus, Ohio.

<u>FACTS AND BACKGROUND</u>

20. The parties travelled, with the children, to Israel on or about 12/21/2020 with return tickets on 1/4/2021. Defendant Yael extended the return date of the tickets to 1/10/2020.

21. On or about 1/7/2021 Defendant Yael (Mother and wife) unlawfully abducted the parties' children. The couple woke up together that morning, Plaintiff prepared breakfast for the children, Defendant Yael said she will take them for a walk in the park, and disappeared with them.

22. On the same day, 1/7/2021 Defendant Yael went to the civil family court and requested an ex parte order of protection, alleging that Plaintiff told her that she is "acting strange" and she fears for her life. She posed as a resident of Israel and concealed the fact she was merely a tourist. Judge Esther Jitnitzky granted the order. A hearing was scheduled for 1/13/2020 on notice to Plaintiff.

23. On 1/10/2020 Defendant Yael opened divorce mediation proceedings in the rabbinical court of Tel Aviv before Def. Shtasman, posing as a regular resident of Israel and perjuring herself in lies that the Plaintiff disappeared somewhere unknown in the USA and she has no idea where he lives. 3 days later she ha to appear in the family court for the cross examination on the order of protection.

24. On the day of the hearing on the order of protection, Judge Iris Ilutovich told Plaintiff Yael and her application was baseless and that she must negotiate terms to let the father start seeing his children, at least temporarily.

25. The next day, 1/142021 Defendant Yael went back to Rabbi Shtasman and asked him to issue an ex parte no exit order on Plaintiff, which Defendant rabbi Shtasman so ordered.

26. On 1/28/2021 Defendant Yael went back to Defendant Rabbi Shtasman and filed with him a divorce and custody complaint. Meanwhile her lawyers prepared a stipulation for interim child contact and served both documents on Plaintiff, telling him that he will see his children only after rabbi Shtasman approves the stipulation, scheduled for 2/7/2021.

27. On 2/7/2021 Plaintiff appeared before Defendant Rabbi Shtasman and told him that he signed it because she threatened him, and that he refuses to so order the stipulation. On the next day, 2/8/2021 Defendant Yael asked Judge Shtasman to appoint a social worker to write a report whether Plaintiff should be allowed to see his children, and whether he is a fit parent. Plaintiff was forced to pay 30,000 ILS ($8,200) for a psycho-diagnostic testing knows as "parental fitness testing" (Shalem Institute).

28. On 2/9/2021 Plaintiff filed a Hague Convention complaint in the civil family court in Tel Aviv, Israel demanding the return of the children under the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents ("the Hague Convention") and the case was assigned to Judge Ilutovich.

29. On 2/17/2022 Defendant Shtasman issued an order asserting jurisdiction on the divorce and custody actions and included a provision that "forbids" Plaintiff from "initiating and/or managing and/or continuing to manage any proceedings in the United States". The date of this Judgement is almost one month after the Ohio Court's Judgement regarding jurisdiction and is over one full year from the date Father filed his *Complaint* in Ohio courts.

30. During the pendency of the Hague case in Israel, on 2/18/2021, Plaintiff filed a Complaint for Custody, Support, and Visitation and a Motion for Emergency Custody in the Franklin County Court of Common Pleas, Domestic Division. He did so via attorneys in Ohio while he was trapped in Israel under a no exit order.

31. On 3/24/2021, Judge Ilutovich at the civil family Court, after hearing Plaintiff's case for the return of his children, granted Plaintiff's complaint and found that Defendant maliciously prepared the abduction and came to Israel solely for the purpose of abducting the children.

32. However, on 4/14/2021, Defendant Shilo at the Israeli Court of Appeals (District Court) reversed this judgment, stating that because during the pendency of the Hague case Plaintiff agreed to negotiate seeing his children on a temporary basis that means he acquiesced to the abduction, even though Plaintiff never signed the draft agreement, and it was never so ordered at the Rabbinical court due to Plaintiff's refusal.

33. The Plaintiff then appealed to the Israel Supreme Court and on 5/26/2021 Defendant Baron dismissed his appeal citing a precedent from 2011 (the case of Sharon Ben Haim from New Jersey) who was also held to have acquiesced to abduction due to negotiations about seeing the abducted children.

34. In Ohio, a hearing was set pertaining to the Emergency Custody motion, which neither party was able to attend personally due to being in Israel. Yael's counsel entered an appearance on 3/12/2021 and argued that she was not properly served. After several delays and adjournments, a hearing was held on 11/9/2021, and the Court directed the parties to present their respective positions on whether the Court had jurisdiction over this matter.

35. Subsequently, on 1/21/2022, the trial Court issued a Judgement "Entry Regarding Jurisdiction", in which it found "that the Common Pleas Court of Franklin County, Ohio,

Domestic Division, has and shall retain jurisdiction regarding the parental rights and responsibilities [pertaining to] the minor children of this action." The Court arrived at this conclusion through statutory analysis including R.C. 3127.04(A)(1) and 3127.21.

36. On 2/14/2022, Defendant Yael filed a Motion to dismiss Plaintiff's Complaint, citing lack of jurisdiction and insufficiency of service process.

37. On 3/9/2022, another Notice of Appearance on behalf of Mother was filed and the matter was set for an oral hearing on 5/18/2022.   Neither party was present, nor did either party testify.

38. On 5/24/2022 the Court issued a "Judgement Entry" dismissing Plaintiff's case on the ground that service was not properly effected on Yael and that the rabbinical court in Israel is a more convenient forum.  Plaintiff appealed and lost his appeal.

39. Meanwhile in Israel after Defendant Baron's dismissal of Plaintiff's appeal to the Supreme Court, Plaintiff, a tourist in Israel, unemployed and homes was ordered in July 2022 to pay the kidnapper 8,000 NIS ($2,200) per month in child support retroactive to the date of abduction, his attorney fees were escalating, orders of arrest were issued to "enforce" the collection of the astronomical and unconscionable child support and he was hardly seeing the children (after "fitness clearance" from a social worker).

40. On 10/20/2022 Plaintiff managed to escape Israel and return to Ohio, only to find that his home was flooded and is uninhabitable and all his customers are already in contracts with other competitors.

41. Plaintiff is completely alienated from his children.  There are no phones or video calls whatsoever.  Also, Defendant Shtasman terminated any and all of his legal custody rights (known in Israel as Guardianship rights) on March 2022 and as of that date Judge Ilutovich demands that he return to Israel to attend a child support trial under the threat that judgment for permanent child support will be entered on default.


<u>1st CAUSE OF ACTION – ABDUCTION</u>

42. Prior to 12/20/2020, the date of travel from Ohio to Israel, Plaintiff was the co-custodian and co-guardian of the children, living with them in the same home and being the primary caregiver who took care of them, fed the, showered them and took them to children's activities. The Defendant was mostly basking in hedonistic and parasitical life, idling herself. For example, just two weeks before the family visit to Israel, she went with girlfriends on a trip for fun in Mexico, leaving Plaintiff alone with the children, caring for them, while also running a business.

43. Prior to 12/20/2020, the date of travel from Ohio to Israel, the children's habitual place of residence was solely and completely in Ohio, where they were born.

44. On 12/20/2020 the children were taken to Israel by both parents for a 14 days family vacation only, which was extended to 1/10/2021, the date of the return tickets.

45. Plaintiff fully intended for himself, plaintiff Yael and the 3 children to board the plane back to the USSA and return home.

46. Plaintiff never agreed, consented or acquiesced to keeping the children in Israel beyond 1/10/2021.

47. On 7/1/2021 Defendant Yael took the children outside the place where the family was vacationing in Israel, and disappeared with them. Such disappearance was a wrongful removal or wrongful retention of children who were habitually resident in the USA and not in Israel.

48. Such removal or retention was in breach of custody rights under Ohio law.

49. Plaintiff was actually exercising custody rights at the time of the removal or wrongful retention (see Hague Convention, Arts. 3-4). In fact, in the morning of the abduction, Plaintiff made breakfast for the children, fully being duped by Defendant Yael that she was "taking them out for a "morning walk in the park" with no intentions to return.

50. The children are young and therefore they cannot be considered "well-settled in the new surroundings". Defendant Yael actually testified that until the Supreme Court decision in Israel (5/26/2021) she was not sure whether she will be allowed to stay so she was not even

looking for a job. Only after the Supreme Court decision she felt confident to "settle" and got a job as an accountant in a prominent law firm at 12,000 ILS a month ($3,250 per month).

51. Plaintiff never consented to the abduction.

52. Plaintiff never acquiesced to the abduction. He was actually tricked into negotiating temporary visits out of duress, using an interpretation of the Israeli Supreme Court from 2011 in the matter of Sharon Ben Haim that the judge in NJ (the Hon. Bonnie Mizdol) described as ludicrous.

53. There is no grave risk of danger to the child in the home country, USA.

54. The children are under 6 years of age and too young to object to return to the USA. Given the long period of incitement by the vengeful Defendant, they may well be brainwashed against the Plaintiff.

55. There is no known public policy that returning the child would it. The policy of the United States is that a child who is habitually resident in one country and wrongfully removed from or retained outside of that country shall be promptly returned to that country.

56. However, in Israel there is a public policy to assists women kidnappers at all costs to retain the children by using false interpretations of the Convention, and that should not be recognized by the USA Courts.

57. By abducting the children to Israel, defendant Yael prevented the Plaintiff from having a fair chance to litigate custody or to share quality time with the children, because the laws in Israel dictate that children under the age of 6 are always in maternal custody (the Tender Years Presumption) and the case law even makes that presumption stronger by giving women veto powers over the rights of visitations.

58. Plaintiff Yael Peled did all of the above acts and removed 3 children who had been in the United States from the United States with the intent to obstruct the lawful exercise of parental rights of Plaintiff, and she managed to do so for more than two and a half years in violation of 18 U.S.C. § 1204.

59. The period that Plaintiff was locked in the State of Israel without the ability to freely travel to his home in the USA constitutes a tolling period of the one-year statute of limitations under the Hague Convention.

60. Plaintiff is entitled to a declaratory judgment of recognition of him as a victim of child abduction ("a left behind parent"), and to all the remedies available, including:

a. a decree to the authorities of the USA including Office of International Affairs and Department of State's Office of Children's Issues to invoke any means, including legal and diplomatic, available to return the children, and criminal prosecution of Defendant Yael Peled.

b. Place the abductor YAEL PELED on databases of abductors, and place the children on databases of abducted children,

c. Issue a warrant of arrest to YAEL PELED and disseminate it to all international law enforcement agencies due to her violation of violated the Parental Kidnapping Prevention Act of 1980, 18 U.S.C. § 1073 and the federal offense at federal offense, 18 U.S.C. § 1204.

d. Refuse to cooperate with the State of Israel on any abduction matter until it rescinds the interpretation invented in the Sharon Ben Haim's case that when a man is negotiating temporary visits during an illegal retention period of the children, it will not be considered as acquiescence to an abduction.

## 2nd CAUSE OF ACTION – TORT COMPENSATION

61. Defendant Yael planned and prepared the abduction of the children in advance in order to forum shop a jurisdiction that is known to be most favorable to women, known to be very forgiving towards women abductors, and known to award astronomical and unconscionable amounts of child support that they would never receive anywhere else.

62. Defendant Yael lulled Plaintiff into believing that he is only travelling to Israel for a short few days of vacation, where indeed she had set up a preplanned trap for him.

63. Defendant Yael's actions were made with full knowledge, malice and intent to harm Plaintiff, obstruct his access to his children, destroy his livelihood, and deprive his liberties and freedoms.

64. Plaintiff is entitled to compensation from Defendant Yael Peled for the act of kidnapping three children from the USA in obstruction of the rights of the Plaintiff as a father, and having inflicted upon him the pain and suffering, loss of filial emotions and love with his children, attorney fees, two and a half years of deprivation of liberties and for that he is entitled to recover $5,000,000.

## 3rd CAUSE OF ACTION – ANTI-SUIT

65. Defendant Peled is currently pursuing against Plaintiff proceedings in 3 instances: in the civil family court for permanent child support where she is demanding the sum of 15,000 ILS $4,100 per month which includes payment of 50% of her rent and maintenance of her housing costs, and as of 12/18/2022 she is demanding "Dmey Tipul" of another 2,500 ILS ($670) per month (which is a separate charge from child support and is intended to "compensate" a mother for the time she cares, i.e. spend time with the children, such as cooking, washing and reading books). This case is before Judge Ilutovich in Tel Aviv.

66. The second proceeding is in the rabbinical court before the Defendant Rabbi Shtasman where defendant Yael is seeking a divorce decree from the Plaintiff who was merely a tourist there, property distribution (including property in Ohio), and sole legal and physical custody.

67. The third proceeding is in the Child Support Collection Unit where she is seeking collection of a "debt" in the amount of 110,000 ILS ($30,000) as of 6/242023 for child support imposed on the Plaintiff when he was a tourist in Israel, away from his collapsing business without the ability to work, swamped in legal proceedings and unemployed.

68. All such three proceedings are based on laws and case laws that statutorily discriminate against men, do not give a man a chance for a fair trial, violate the principles of equal protection, and are designed to strip the man of everything he owns and rob him of his children.

69. In the case of Sharon Ben Haim, a father and resident of New Jersey who was lulled into coming to Israel with his daughter and the former wife, only to be faced with a premeditated abduction, false domestic violence complaints, and a no exit order, when he managed to return home to NJ in 2011, the Court in New Jersey awarded him custody, child support, issued an anti-suit against Ms. Ben Haim from litigating in any court in Israel, placed Ms. Ben Haim on the Interpol most wanted list, said that the Supreme Court judgment that he acquiesced to the abduction because of interim offer to see his children was ludicrous, and issued an engulfing order that no order or judgment emanating from the ecclesiastical courts of Israel (the Rabbinical courts of Israel) shall ever be entitled to recognition or domestication in NY.

70. In order to illustrate just how offensive the war on men in Israel is, see the posters (and TV campaigns) which Plaintiff had to see when he was arrested in Israel for an alleged failure to pay the extortionist child support imposed on him by order of the Hotzlap Magistrate Lauren Akuka dated 12/23/2021 (Case 510992-09-21). See the official poster and flier:





71. See also the video clip that aired on tv as uploaded by the employer of Defendant Lauren Akuka to Youtube at:  https://youtu.be/aSEYrroz-x8/



72. This is a visual proof that the Defendants declared a war on the Jewish men of Israel. However, explicit admissions in writing and in English can be found in the Israeli periodic reports to the UN Committees on Civil and Political Rights and the UN Committee on Economic Social and Cultural Rights. In 2011 the latter Committee admonished Israel for not complying with international laws and standards by giving automatic custody to women, exempting women from child support, imposing an enormous burden on the men, and not taking measures to prevent more than 200 annual cases of suicide by men in divorce or divorce proceedings.

73. The Plaintiff is therefore entitled to an order of anti-suit enjoining Defendant Yael from continuing to prosecute any of the cases she maintains against Plaintiff which she opened at a time when he was a citizen and resident of the USA, merely a tourist in Israel trapped there involuntarily, and for each day or week that her obstinance and disobedience continues to in imposed daily, weekly or monthly fines as the Court deems fit.

## 4th CAUSE OF ACTION – LOSS OF FILIAL CONSORTIUM

74. Plaintiff repeats and realleges all paragraphs set for above and assets this cause of action against Defendants Yael, Shilo, Baron and Shtasman for loss of filial consortium, companionship and society with his children.

75. Defendant Yael premeditate all her actions as set forth above to deprive the Plaintiff of his parental rights over his children, and to deprive him of the joy, love, affection, society and companionship of his children as of the date of the abduction 1/5/2021 to the present.

76. Defendant Shilo, Baron and Shtasman, on a regular basis deprive fathers in Israel of their filial consortium rights to the children. They condone parental alienation if the mother is the perpetrator, and even encourage it as a tool for women to extort money and property from men, or even only for revenge purposes, all in the name of implementing a radical feminist agenda.

77. In fact, Defendant Shtasman completely and indefinitely terminated Plaintiff's guardianship rights (the legal custody), ands refuse to order any type of physical custody or phone or video contact. His cohorts Shilo and Baron deliberately made their rulings so as to obstruct Plaintiff's parental rights, and force him to fight for the right to enjoy the company of his children in a jurisdiction that is known for male mongering and radical feminism.

78. The Plaintiff indeed lost the joy, love, affection, society and companionship of his children, because of the Defendants' conduct, as well as his rights to physical and legal custody and he is now completely alienated from his children for a period of 2.5 years.

79. Had Defendant Yael materialized her desire to divorce by filing a divorce case in Ohio, the true and correct jurisdiction for the divorce, where the parties lived with the children, the result would have been completely different and in all probability the parties would have enjoyed a 50%:50% equal custody arrangement, or at minimum liberal international custody arrangement, and Plaintiff would not have lost his children, alienated from them and his legal rights as a father would not have been judicially terminated.

80. As a proximate result of Defendants' actions, Plaintiff has been deprived of his children, incurred expenses for defending his rights and escaping Israel, and has suffered extreme embarrassment, shame, anxiety, and mental distress.

81. The acts of Defendants are shocking, offensive to the morals of any society and utterly repugnant and for that Plaintiff is entitled to a judgment in the amount of $5,000,000.

## 5th CAUSE OF ACTION – INTENTINAL INFLICTION EMOTIONAL DISTRESS

82. Plaintiff repeats and realleges all paragraphs set for above and assets this cause of action against Defendants Yael, Shilo, Baron and Shtasman for intentional infliction of emotional distress.

83. Defendants' acts described above constitute outrageous conduct. That includes the no exit order that was imposed on him, the dragging of him as a tourist to Courts that he was never supposed to litigated before them, letting his business in Ohio collapse without the ability to fix and mitigate escalating damages, causing him to live in sub human conditions in Israel, issuing orders of arrest against him, causing his children to be alienated, terminating his parental rights, and imposing on him extortionist child support expected to be paid as if he was a resident of Israel and at a time that he was unemployed and a tourist.

84. Defendants intended or acted in concert to intend to cause emotional distress to the Plaintiffs, by conduct which was discriminatory (gender-based apartheid), intentional and malicious and done for the purpose of causing Plaintiff to be a victim of torture, false confinement, suffer humiliation, mental anguish, and emotional and physical distress, attorney fees, costs and damages to business.

85. Alternatively, Defendants engaged in the conduct with reckless disregard of the probability of causing Plaintiffs to suffer emotional distress, Plaintiffs were presence within the zone of danger of Defendants' acts, and Defendants knew that Plaintiffs were so present and likely to so suffer.

86. As a proximate result of defendant's act or omissions Defendant suffered the damages described.

87. As a further proximate result of defendants' acts and the consequences proximately caused by them, as hereinabove alleged, plaintiffs suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body.

88. The emotional distress suffered by Plaintiffs was serious or severe.

89. Plaintiff was injured by the actions of the Defendants, including frequent arrests and baseless detentions, a massive libelous "character assassination", extended periods of disengagement from children, extensive periods of loss of parental time, post-traumatic stress disorder, sleep deprivation, heightened emotional nervousness, suicidal tendencies, need for painkillers and medications, loss of wages or earning capacity, loss of job, loss of reputation, and actual impoverishment.

90. As a proximate result of one or more of these intentional acts or omissions, Plaintiff sustained untold and incalculable damages.

91. Plaintiffs are therefore entitled to recover from Defendant Yael, Shilo, Baron and Shtasman the sum of $5,000,000.

## 6th CAUSE OF ACTION – ILLEGAL CONFINEMENT

92. Plaintiff repeats and realleges all paragraphs set for above and assets this cause of action against Defendants Yael, Shilo, Baron and Shtasman for illegal confinement ("False Imprisonment").

93. Plaintiff arrived in Israel on 21/12/2020 merely as a tourist, yet by actions of Defendants Yael, Shilo, Baron and Shtasman who cooperated with each other he became subject of an unlawfully restraint against his will by someone without legal authority or justification, who did so solely for the purpose of extorting Plaintiff, forcing him to lose his assets and children, and to enrich Yael and satisfy her whims because she is a woman for a duration of 22 months during which Plaintiff was confined to not exiting the State of Israel.

94. As described above the entire state of Israel became the site of plaintiff's involuntary detention and this was done by defendants willfully, maliciously and with intent to damage and harm. Needless to say, that the detention was against Plaintiff's will.

95. This illegal detention although Yael asked for it in a legal proceeding and it was done in a legal proceeding, that proceeding was a sham proceeding, a circus where the judges and rabbis accommodate the women's every wish and practically assisting her to extort and

revenge against the Plaintiff, against Plaintiff's rights as an American citizen, both not to be discriminated against and not to have his freedom deprived for no reason whatsoever.

96. Plaintiff's only way to escape this confinement was by way of using the aid of illegal border smugglers at a hefty price.

97. It is estimated that every year at least 100 -200 foreign citizens lose their freedoms in that way. Some commit suicide, and some die of starvation. The US embassy knows about it and deliberately decided to stay away and take no action.

98. As a proximate result of Defendants' actions, Plaintiff has been deprived of his liberty, has incurred expenses and has suffered extreme embarrassment, shame, anxiety, and mental distress for which he is entitled to recover $5,000,000.

## 7th CAUSE OF ACTION – RACKEREEING (EXTORTIONST ORGANIZATION) v. ISRAEL

99. The Defendants Shtasman, Baron Shilo and the State of Israel have devised a "racketeering activity" that is nefarious, illegal and in violation of the laws of nations in specifically targeting victims such as the Plaintiff who are male, non-Israelis by origin and are or were married to Israeli women, in order to extort them and rob them of everything they own, including robbing them of their basic right to their children and fatherhood, further, turning them into financial slaves for life and holding them physically captive in the Israeli extortionist system.

100.       As explained, the extortion is committed by taking advantage of the fact that the jurisdiction of the state of Israel is converted into a death trap for any such targeted victim who dares to enter the borders of Israel where defendants have these super powers. For example when a tourist arrives and his wife wants to divorce in the feminist courts of Israel or when he is overseas but forced to "defend" his rights in the notoriously corrupt and biased courts where the entirety of the judicial system is rife with discrimination, gender apartheid and bias, corruption based on either religious or ideological principals in favor of women, with zero chances of obtaining so much as a modicum of due process or equal protection under the laws of that country.

101.     As of the drafting of this complaint there is not a single case in the entire corpus of cases in Israel that protects a man coming from overseas to attend a trial or hearing, or even for vacation or visiting family from not being able to return to his home and loved ones in the USA. Any men can be trapped within 10 minutes from the woman's ex parte application for a no exit order.

102.     It is incredibly easy for any woman to win on any bogus claims she invents (i.e., claims that are per se extortionist claims) by default, given all the women must do is fill out a simple form and request the departure ban of the man in Israel under a no exit order, and within 10 minutes it is so ordered, no questions asked.

103.     The US Department of State is aware of this extortionist judicial trap. For many years it posted a travel advisory to all American men contemplating travel to Israel, to be fully aware of the risk that the US cannot help them if they do get trapped under a no exit order and must litigate the proceeding to save themselves from lifelong detention in the state.

104.     See the US DOJ Travel Advisory to Israel:



and cannot assist those arrested in Gaza.

**Court Jurisdiction:** Civil and religious courts in Israel actively exercise their authority to bar certain individuals, including nonresidents, from leaving the country until debts or other legal claims against them are resolved. Israel's religious courts exercise jurisdiction over all citizens and residents of Israel in cases of marriage, divorce, child custody, and child support. U.S. citizens, including those without Israeli citizenship, should be aware that they may be subject to involuntary and prolonged stays (and even imprisonment) in Israel if a case is filed against them in a religious court, even if their marriage took place in the United States, and regardless of whether their spouse is present in Israel. The U.S. Embassy is unable to cancel the debt of a U.S. citizen or guarantee their departure from Israel when they face a bar from leaving the country until debts are resolved.

**Purchases of Property:** U.S. citizens should always seek legal advice before buying or leasing property in the West Bank and Gaza. Please see the most recent Investment Climate Statement

105.     Beginning in 1/14/2021 and continuing into the foreseeable future, the defendants, jointly or severally, committed against Plaintiff acts of extortion and illegal detainment of his body as collateral (by holding Plaintiff hostage in Israel under a bogus no exit order) for invented, made-up financial claims that Defendant Yael fabricated. After Plaintiff managed

to escape from the hellish situation in Israel, a subsequent extortion ensued and Defendants demanded that Plaintiff return to Israel, purportedly to attend hearings, or else he was threatened with default judgments, and if he does "return", he shall risk loss of freedom of movement, and possibly never be able to depart Israel for the duration of his natural life.

106. In the past 25 years these defendants and all other judges in Israel who follow the directives of the radical feminist agenda have committed the same acts of extortions in a systematic, calculated, and malicious way targeting approximately 2,000 foreign men married to Israeli women every year.

107. For example, on 6/4/2023 Israeli press reported that a homeless man who lived in a cave on the "Palmachim" beach for 13 years with no rights to work because he is a Portuguese citizen, who was under a no exit order for a debt of 30,000 ILS ($8,300) that mushroomed with Israeli usury interest rates to 300,000 ILS ($83,000) was allowed to leave Israel after intervention for the Portuguese Government who invoked an international treaty for reciprocity in Legal Aid[1].

108. For example, in Haifa Judge Hila Gurevich extorted the American citizen Avraham Herssein whose wife tempted him to immigrate to Israel and upon arrival launched a divorce case against him. Judge Gurevich ordered him to pay 7,000 ILS ($2,000) in child support when he was unemployed and his lease expired, and issued a no exit order against him. Mr. Herssein was so desperate that in March 2023 he ran trough a landmine field into the neighboring country of Jordan risking his life. He was caught, returned to Israel and ordered to post a bond of 170,000 ILS ($48,000). He managed to take a loan to pay the ransom and leave Israel via the airport in April 2023, but the Judge scheduled a hearing to increase the child support permanently and retroactively and demanded that he return to Israel or the woman's demands be granted on default, so that the wife can collect it in Israel. Judge Gurevich refused to recognize agreements made in the USA and approved by a Rockland

---

[1] Because of a few checks: A Portuguese citizen lived for 13 years in a tent on Palmahim Beach - until the news arrived | Israel Hayom - The Limited Times (newsrnd.com) at https://newsrnd.com/news/2023-06-05-because-of-a-few-checks--a-portuguese-citizen-lived-for-13-years-in-a-tent-on-palmahim-beach---until-the-news-arrived-%7C-israel-hayom.HJzPmmLoU2.html

County, NY Judge for equal custody and no child support during unemployment or disability[2].

109.    This pattern repeats itself across thousands upon thousands of cases. Another example is that of a gay father who lives in Miami, Shimi Sharon. The lesbian mother who lives in Israel filed a libel claim in the family Court in Rishon LeZion, Israel. Judge Mirit Polus allowed the woman to serve a summons extraterritorially to Miami via email and upon notice of 7 days demanded that this gay father (who also has 2 children in Miami) show up before her or risk a default judgment, knowing full well that the mother in Israel is anxiously seeking to lock him in Israel as her own personal hostage the moment he sets foot in Israel.

110. In yet another example, a father who has been tormented by Judge Ayelet Golan-Tavori also in Rishon LeZion family Court managed to escape Israel and save his own life. He arrived in France and received Refugee status. Judge Dolan Tavori threatened to give all the property he left behind to his wife if he does not return to Israel and denied his application to attend by video. This case was decided on October 23, 2011, Case 32520-09.

111.    In another example, an Australian father Ron Shahar living in Israel was sued by his wife for 15,000,000 ILS ($4,200,000) claiming that she is entitled to 5,000,000 ILS ($1,400,000) compensation for each child she carried in her womb, a "fruits of the womb" bogus tort claim against her husband. Based on her word alone and contrary to specific language in a premarital agreement, Judge Sigalit Ofek issued a no exit on this man which lasted 14 months. Initially the bond to exit was 850,000 ILS ($236,000) and only in September 2021 after 14 months it was reduced to 465,000 ILS ($130,000). His mother in Australia cashed out her pension and redeemed the life of her son. Thereafter, he was threatened that if he does not return to Israel, a judgment for 25,000,000 ILS ($7,000,000) will be entered against him. The extra 10M is for child support. He arr8ived in Israel to testify, was thrown out of Court on an allegation that he violated a corona isolation and judgment was entered against him on default. He appealed from overseas and managed to

---

[2] The Newz Times - Dad held in Israel till the 12 months 9998 at https://thenewztimes.com/dad-held-in-israel-till-the-12-months-9998/

overturn it, but when the case return to Judge Ofek, she again demanded that he "return" to Israel "to testify, or else the Judgment will be restored[3].

112. The fact that this same pattern existed already 11 years ago, and that in that case the Judge refused to honor the UNHCR Refugee Convention 1951 by demanding that a refugee return to the country that persecuted him, shows a pattern of extortion. This satisfied the continuity requirement of H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

113. This pattern of ongoing racketeering will continue well into the future as there are no signs that any of the Israeli Defendants, who have s the power to change all this, will suddenly change their adherence to the feminism agenda and father hating cult.

114. These acts of racketeering and extortion satisfy the Interstate Commerce Requirement as the targets, Plaintiff and other fathers and men similarly situated are outside the State of Israel but they are dragged into the quagmire and shenanigans of the Defendants and their tactics involuntarily and naively, thereby affecting their property in Israel, and once a Judgment of default is entered against them, then the defendants use the multiple international cooperation and mutual recognition conventions to chase them down at their foreign addresses.

115. Defendants' calculated pattern of racketeering is based on the following predicate acts:

a. Predicate acts based on § 1341 (relating to mail fraud) and § 1343 (relating to use of wires): The mail and wire fraud statute (18 U.S.C. §§ 1341, 1343) makes it criminal for anyone to use the mails or wires in furtherance of a scheme to defraud or to extort. The fraudulent and/or extortionist statements themselves need not be transmitted by mail or wire; it is only required that the scheme to defraud be advanced, concealed or furthered by use of the U.S mail or wires.

---

[3] Israeli Judge slaps $3.6 Million Judgment on Australian dad for getting his wife pregnant (prsync.com) at http://prsync.com/ednakarnaval-news/israeli-judge-slaps--million-judgment-on-australian-dad-for-getting-his-wife-pregnant-3591461/

The Defendants mailed by email or other electronic means or wires to Plaintiff or his designees what appears to be ransom "decisions" which demanded that he must appear in Israel and subject himself to a no exit order again and to possible warrants of arrests or judgments will be entered on default taking his and his family's property and giving it to the wife, as well as extortionist child support. Already a mail or wire was sent to plaintiff from Shtasman terminating Plaintiff's guardianship (legal custody) of his children. That satisfies the use of mail and wires to perpetrate extortion. Further, it was done in interstate or foreign commerce for the purpose of executing such scheme of extortion to deprive Plaintiff and other men similarly situated (Americans and non-Israelis) of the intangible right of honest services.

b. Predicate acts based on section 1503 (relating to obstruction of justice): the Israeli Defendants, alone or in conspiracy corruptly, or by threats or force, or by extortion or any threatening letter or communication, endeavoured to influence, intimidate, or impede proceedings in Israel where the Plaintiff Yael is threatening to sue Plaintiff's family in Israel to recover from them the judgments which she is receiving on default against the Plaintiff so as to take his personal property by threats or force, or by any threatening letter or communication, influenced, obstructed, or impeded, or endeavoured to influence, obstruct, or impede, the due administration of justice.

c. Predicate acts based on section 1513 (relating to retaliating against a witness, victim, or an informant): Defendants knowingly engaged in conduct that is extortionist by locking Plaintiff in Israel for 22 months, restricting his liberty and livelihood and after his exit threatening him that he must return to be cross examined and risk another indefinite period of State wide lock in, caused bodily injury to Plaintiff or damaged the tangible property of Plaintiff, or threatened to do so, with intent to retaliate against Plaintiff for his the attendance or testimony which Shtasman and Ilutovich require him to give in person. Needless to say, that after Corona, testimony by video has been readily available to any litigant or witness, except fathers and men in family courts.

d. Predicate acts based on section 1951 (relating to interference with commerce, robbery or extortion): Defendants have obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce, by robbery (as defined" "unlawful taking or obtaining of personal property from the person or in the presence

24

of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining) or extortion (as defined: "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right") or attempted or conspired so to do, or committed or threatened physical violence to Plaintiff or property in furtherance of a plan or purpose to do anything in violation of 18 USC § 1951 by preventing Plaintiff exiting Israel to complete transactions originating from China and intended for consummation in the US, in Dallas, and other points of redemption in the US.

e. Predicate acts based on section 1952 (relating to racketeering); the defendants committed "unlawful activity" as defined in 18 USC § 1952 (b)(2) including "extortion" in violation of the laws of the State or the laws of the US (which include the constitution, Due Process, Equal Protection and international human rights treaties) in interstate or foreign commerce or using the mail or any facility in interstate or foreign commerce, with intent to distribute the proceeds of the unlawful activity (the extortion of an apartment in Israel and the extortion by way of astronomical and discriminatory child support to Yael or commit any crime of violence to further any unlawful activity; or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform an act described above.

116. By reason of the foregoing the defendants caused Plaintiff injuries and damages due to the commission of one or more of the predicate acts defined by 18 U.S.C. §1961(1), (the definition of racketeering activity) and given that plaintiff was the intended target of that defendant's conduct, extortion and illegal confinement he suffered damages and Plaintiff is entitled to judgment in the amount of

a. $200,000 USD in attorney fees for the defence of proceedings in the Rabbinical court before Shtasman and the appeal before Defendants Shilo and Baron on the child abduction, which should have been ruled in Plaintiff's favor, as did Judge Ilutovich.

25

b. 10,000 NIS X 12 months X 19 years = 2,280,000ILS ($635,000) in bogus "child support" granted to Yael as temporary support in the orders of Ilutovich.

c. $50,000 cost of rescue operation out of Israel.

d. $250,000 (at $100,000 per year) losses to locksmith business in Ohio during the illegal confinement under no exit in Israel for the total loss and destruction of the business which if not for the illegal denial of his basic right to travel for work would have launched successfully and provided him and his children with significant income and wealth creation for multiple generations.

e. $100,000 property damage to the house in Ohio due to a flood in the basement which Plaintiff could not repair due to lack of access, and inability to afford insurance due to liens on all his accounts.

f. Pain, suffering in the amount of $1,000,000 to compensate plaintiff for the 22months of human rights and civil rights abuses inherent in the illegal detention within the borders of Israel applied for over 2 years under a horrific, degrading and humiliating no exit order including compensation for the mental, psychological, and emotional trauma and suffering caused by the loss of access to his children, both in the US and Israel as a result, for the trauma of being tortured and tormented to the point of having to risk life escaping out of Israel and the constant demands from Israel that he return and subject himself to a new indefinite no exit order in a country where he has no work and no home, and for the humiliation of being a victim of sex-based discrimination and a victim of extortion and torture, and for the termination of his custody rights both legal and physical (via telephone or video).

117. The aggregate sum of the damages is $2,235,000 against all defendants, jointly and severally, for compensatory damages.

118. The conduct of Israeli defendants and the State of Israel violated international standards of human rights, as incorporated into US Courts via UN international covenants and conventions on human rights, the equivalent of Due Process and Equal Protection) by inflicting discrimination based on Plaintiff's gender as a man, locking him in Israel for __

months without a home or ability to work, throwing him out of his home, putting a lien on his property, denying all his complaints for relief, allowing his wife Yael to extort him and his family members residing in Israel with a bogus claim, applying judicial extortion by demanding astronomical amounts of ransom, and upon his exit extorting him that if he does not return, everything he owns will be lost and he will lose any contact with his 3 children forever.

119. Plaintiff has no chances of obtaining justice or avoiding the ring of extortion because Defendants made sure no targeted man can escape their wrath anywhere in the world via a network of international reciprocity treaties.

120. Plaintiff and all those Jewish men similarly situated (non-Israelis) can get justice and fairness from Defendants like Hila Gurevitch, in the same way a medieval person sentenced to death by King's order could obtain justice from the headsman before being decapitated if they simply asked for it.

121. The conduct of defendants constitutes crimes against humanity and a perpetration of a modern lynching of innocent fathers in the name of the cult of "feminism". They knowingly, willingly and maliciously violated the laws of all nations and *jus cogens*. Their conduct has been outrageous, shocking, repugnant and abhorrent.

122. Plaintiff is entitled to invoke the Alien Tort Claims Act and the TVPA (Trafficking Victims Protection Act of 2000) and by reason therefore Plaintiff is entitled to judgment for his damages in the amount of $2,235,000.

## 8th CAUSE OF ACTION – Bivens claim v. USA Defendants

123. Plaintiff repeats and realleges all pleadings above as if fully set forth below and sets forth a Bivens claim against the USA Defendants DOJ, Blinken and Nides.

124.  The USA Defendants at all times relevant to this action were acting as agents or authorities of the United States, a nation whose Constitution guarantees full equal protection and due process to its citizens, residents and those coming to its Courts.

125. As the United States contracts with other nations to reciprocate each other judgments and orders and cooperate in legal matters, civil criminal and family law, the US is carefully monitoring the performance of all other nations in the world in terms of adherence to human rights and the rule of law.  When it appears that certain countries violate and offend the basic freedoms of human rights, the USA takes action, whether diplomatically or by filing reservations to recognition of those countries' judicial products.

126. Ever since 1995 when State of Israel created its family courts and started implementing radical feminist ideology in its courts, US agents and authorities started receiving hundreds of complaints from American men every year about being trapped in Israel, subjected to inhuman treatment and extortion.  These complaints are registered in the US Embassy in Tel Aviv where Defendant Nides works, and at the international department at the DOJ, in Washington where Blinken is the chief supervisor.

127. In Tel Aviv, the ambassador, the consul and all staff, as a matter of policy and practice refuse to provide any consular assistance, refuse to assist the American citizens in need, refuse to use diplomatic channels of protest to rescue the lives of thousands of men, and simply ignored the plight of all those trapped, robbed, alienated, extorted whose freedom to travel, livelihood and parenthood had been so brutally robbed from them.

128. In fact the Defendant Ambassador Niden supports the radical female organizations of Israel.  He invite them to special events, and encourages them to continue the dissemination of hate speech against the men of Israel.

129. In Washington, the officers under leadership of Defendant Blinken collect the complaints they receive and do nothing about it.  The officers in charge of cooperation w Israel know full well that the laws of Israel are discriminatory, offend all concepts of equality, and that none of the cases emanating from the courts of Israel are decided in a fair trial settings, based on evidence, fair play and fair opportunities to be heard, yet they continue to receive from Israel requests for cooperation in civil and criminal cases and requests for enforcement of Israeli child support orders against men living in Israel.

130. These officers know or should have known that these cases Israel send to the US for enforcement and collection, all of them. Contain exorbitant, astronomical figures that on its face appear to be unreasonable and extortionist (for example a case where a judge "finds" that the father's salary is $2,000 a month, yet he awards $3,000 or even more in child support. Such cases are obviously abnormal and extortionist, yet the US officers continue to hunt the men in the USA and file reciprocation cases against them to enforce the Israeli orders.

131. Also the DOJ officers and American Defendants monitor Israel's track record of refusals to return abducted children overseas when the abductor is a woman. At least since the fiasco of Sharon Ben Haim in 2011 he has sued in American Courts the Israeli officials who tormented him, and constantly sent letters of demand to the DOJ and Interpol with examples of how Israel traps men who travel to Israel to testify in Hague abduction cases with a no exit order, and how very few abduction cases are granted when the abductor is a woman[4].

132. Most of not all of these cases, contain supporting transcripts where it is obvious that no trail was conducted, or that the father "failed to appear" or that he was denied discovery or opportunity to cross examine, yet the DOJ officers continue to "cooperate" with Israel.

133. The American defendants both in Tel Aviv Embassy and Washington violated Plaintiff's constitutional rights to be protected from discrimination and gender-based extortion, and they did so as to all other American men similarly situated, knowingly, willingly with malice.

134. The American Defendant's omissions and failure to act against the transgressions of the rogue state of Israel was a direct and proximate cause of the damages suffered by Plaintiff as his constitutional rights were deprived.

135. The American Defendants had the power and ability to correct and redress the wrongs, but willingly chose to do nothing.

---

[4] Child Abduction - Report to Hague Permanent Bureau | הקואליציה למען הילדים והמשפחה -- Coalition for Children and Family in Israelהמשפחה והילדים למען הקואליציה — Coalition for Children and Family in Israel (fairdivorce.co.il) at https://www.fairdivorce.co.il/fa/eng/child-abduction-report-to-hague-permanent-bureau/

136.  Based on the forgoing Plaintiff is entitled to a declaratory judgment that no decision, order pf judgment from Israel in matters of family custody and child support should be accepted for mutual recognition in Israel until the Israeli counterparts show that all laws of Israel have been amended to reflect full gender neutrality, to a mandamus order to the US DOJ to cease and desist any and all cooperation with Israel in enforcing child support or abduction cases until Israel amends its laws and implements full equality between a man and a woman as to child support, abolish the exemption of women from child support and implements formulas that are based on actual income and not on vague religious teachings from 2,000 years ago.

137. Plaintiff is also entitled to recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42, and/or damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent, and/or To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States and/or To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote in the amount of $5,000,000.

138. Finally, the State of Israel is now Courting the USA to allow its citizens visa free access to the USA.  The American Defendant should be decreed to condition any further negotiations on guaranteeing American citizens in Israel freedom of travel to exit Israel, freedom from religious and biased rulings and equal protection and due process.

**WHEREFORE**, Plaintiff prays for a judgment awarding damages in the amount of 5,000,000, and for declaratory and injunctive reliefs plus the costs and disbursements and attorney fees.


Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. A. For Parties Without an Attorney I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: Columbus, OH
July 10, 2023

Itzik Peled, Plaintiff pro se
1316 College Ave Columbus Ohio 43209
Tel. (314) 695-7637
Email: peled.itzik@gmail.com

To Defendants:

**Yael Peled**, Fisher Bachar Law Office, 39 Hazohar Street, Tel Aviv, Israel.

Shlomo Shtasman, 33 David Hamelech Street, Tel Aviv, Israel

**Anat Baron**, 1 Kiryat Hamemshala Street, Bet Mishpat Elyon, Jerusalem, Israel.

**Naftali Shilo**, 562 Hageffen Street Efrata, Israel.

**Yariv Levin**, 27 Dam Hamakabim Street, Modiin, Israel

**State of Israel**, Ministry of Justice Central Authority, 29 Tzalach A Din Street, Jerusalem, Israel.

**Anthony Blinken**, 950 Pennsylvania Avenue, N.W.
Office of the Attorney General, Washington, D.C. 20530.

**Thomas R. Nides**, 71 Ha'Yarkon Street, 63903 Tel Aviv, Israel. Tel. (011-972-3) 519-7588.
Email: AgTelAviv@usda.gov