**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ITZIK PELED** | ) | **Case No. 2:23-cv-2224** |
| | ) | |
| **Plaintiff,** | ) | **Chief Judge Algenon L. Marbley** |
| | ) | |
| **v.** | ) | **Magistrate Judge Kimberly A. Jolson** |
| | ) | |
| **YAEL PELED,** *et al.* | ) | |
| | ) | **DEFENDANT PELED'S MOTION TO** |
| **Defendants.** | ) | **SET ASIDE FEBRUARY 8, 2024 ENTRY** |
| | ) | **OF DEFAULT** |
| | ) | |

Now comes Defendant, **YAEL PELED**, by and through counsel, and hereby respectfully requests this Court to set aside the February 8, 2024 Entry of Default pursuant to Fed. R. Civ. P. 55(c). The attached Brief in Support of the instant Motion is incorporated herein by reference.

**WHEREFORE**, Defendant Peled requests that the February 8, 2024 Entry of Default be set aside.

Respectfully submitted,

**ZASHIN LAW, LLC**

*/s/ Christopher R. Reynolds*
**CHRISTOPHER R. REYNOLDS (0082107)**
crr@zashinlaw.com
5900 Landerbrook Drive
Landerbrook Corporate Center 1
Suite 280
Cleveland, Ohio 44124
P: (216) 480-3001
F: (216) 480-3002

Attorney for Defendant,
**YAEL PELED**

1

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2024, a copy of the foregoing *Motion to Set Aside February 8, 2024 Entry of Default* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Christopher R. Reynolds*
**CHRISTOPHER R. REYNOLDS (0082107)**
crr@zashinlaw.com
Attorney for Defendant,
**YAEL PELED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ITZIK PELED | ) | Case No. 2:23-cv-2224 |
| | ) | |
| **Plaintiff,** | ) | **Chief Judge Algenon L. Marbley** |
| | ) | |
| v. | ) | **Magistrate Judge Kimberly A. Jolson** |
| | ) | |
| YAEL PELED, *et al*. | ) | |
| | ) | **DEFENDANT PELED'S BRIEF IN** |
| **Defendants.** | ) | **SUPPORT OF HER MOTION TO SET** |
| | ) | **ASIDE FEBRUARY 8, 2024 ENTRY OF** |
| | ) | **DEFAULT** |

Now comes Defendant, **YAEL PELED** ("Defendant Peled"), by and through counsel, and hereby submits the within Brief in Support of her Motion to Set Aside February 8, 2024 Entry of Default pursuant to Fed. R. Civ. P. 55(c). This Motion is made without prejudice to Defendant Peled's rights to assert all available defenses to the Complaint, including, without limitation, insufficient service of process, lack of personal jurisdiction, *res judicata*, and lack of subject-matter jurisdiction.

## I.  PROCEDURAL HISTORY AND FACTS

On July 12, 2023, Plaintiff filed a Complaint naming, *inter alia*, Defendant Peled as one of the defendants (ECF No. 1).

On September 1, 2023, Plaintiff filed two "proofs of service" (ECF No. 4) which concern Defendant Peled. The first one chronologically (ECF No. 4 at 10), dated August 14, 2023, admits that Defendant was not at work when a process server attempted to serve her on July 30, 2024 and August 2, 2024 and states that the process server "left [the summons and Complaint] on the desk with receptionist." Importantly, the process server noted that when he attempted to personally serve

1

Defendant Peled at what he believed was her home address (39 Hazohar Street, Tel Aviv), that residence was "vacant." *Id.*

Notwithstanding Plaintiff knowing that 39 Hazohar Street, Tel Aviv was vacant by virtue of his process server's return of service, the second "proof of service" dated August 25, 2023, states that a copy of the summons and Complaint was mailed by "Nadia Emilien-Kamali", who appears to be an agent of Plaintiff[1], to Defendant Peled's former address in Israel[2] via USPS. Defendant Peled had not resided at that address for approximately two (2) years as of the time Plaintiff attempted to have her served there. No signed return of service was provided or filed with the Clerk.

On November 16, 2023, Plaintiff filed a Motion for Default Judgment (ECF No. 9) despite Defendant Peled not being properly served. On November 28, 2023, this Court issued an Order (ECF No. 10) denying Plaintiff's Motion for Default Judgment and indicating that Plaintiff must first seek an entry of default before seeking a default judgment.

On December 28, 2023, Plaintiff filed a "Status Report" (ECF No. 12) where he inaccurately 1) stated that Defendants Blinken and Nides, had accepted service; 2) alleged again that Defendant Peled was in default; and 3) requested the Court to enter a default judgment against Defendant Peled.

On January 3, 2024, this Court issued an Order (ECF No. 15) vacating the Briefing Schedule and denying Plaintiff's Motion for Default Judgment. In that Order, the Court specifically states that "Plaintiff must seek an entry of default by the Clerk of Court under Fed. R. Civ. P. Rule

---

[1] Ms. Kamali's address listed on the proof of service is 1037 College Avenue, Columbus, Ohio; Plaintiff's address is 1316 College Avenue, Columbus, Ohio (ECF No. 1 at 31).
[2] Defendant Peled resided at that address between February 2021 and June 2021. Defendant Peled further submits that given that Plaintiff was physically present in Israel and involved in ongoing Israeli family law proceedings at least until October 20, 2022 when he fled the country. ECF No. 1 at 9 ¶40.

55(a). To do so, Plaintiff must file a Motion for Entry of Default under separate cover, as to alert the Clerk's Office of its filing." ECF No. 15 at 2.

On February 7, 2023, Plaintiff filed another "proof of service" dated January 26, 2023 stating that Defendant Peled had allegedly been served by Mordechai (Moti) Peled, Plaintiff's brother (ECF No. 18 at 1), while in court in Israel. Defendant Peled denies that she was served by this individual that day. Plaintiff's attempt to serve Defendant Peled yet again is curious given that his request for default filed with the Clerk that same day asks for default to be granted solely on the basis of the service attempts undertaken in late July and August 2023. This January service attempt belies his belief that he, in fact, was entitled to an entry of default. Further, as more fully set forth below, this service attempt does not constitute proper service pursuant to applicable law.

On February 7, 2024, Plaintiff, instead of seeking an "entry of default" as specifically instructed in this Court's January 3, 2024 Order, Plaintiff filed a "Request for Default Judgment." ECF No. 17. On February 8, 2024, the Clerk issued an entry of default against Defendant Peled.

For the following reasons, this Court should set aside the February 8, 2024 Entry of Default.

II.     **LAW AND ARGUMENT**

A.  **Standard to Set Aside an Entry of Default**

Pursuant to Fed. R. Civ. P. 55(c), the "court may set aside an entry of default for good cause." "When a defendant seeks relief from an entry of default, three equitable factors are considered to determine if "good cause" has been shown: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *Burrell v. Handerson*, 434 F.3d 826, 831 (6th Cir.2006) (internal citations omitted).

A motion to set aside an entry of default is discretionary with the court and courts use a liberal standard in determining whether to set aside an entry of default. *See generally, Big Burger, Inc. v. Big Burgz*, LLC, E.D. Michigan No. 19-cv-13413, 2020 U.S. Dist. LEXIS 200630 (Oct. 28, 2020) citing, *inter alia*, *United States SEC v. Merklinger*, 489 Fed. Appx. 937, 939 (6th Cir. 2010) ("the district court enjoys considerable latitude to grant a defendant relief from a default entry"); *United States v. $22,050.00 U.S. Currency*, 529 F.3d 318, 322 (6th Cir. 2010) (As a general rule, Sixth Circuit Decisions on Rule 55(c) motions to set aside defaults are "extremely forgiving to the defaulted party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps"); *United Coin Meter supra at* 846 (6th Cir. 1983) ("Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.").

**B.** **Defendant Peled conduct is not culpable because Plaintiff has not obtained service and his service attempts in Israel are defective pursuant to the Hague Service Convention.**

A court will consider the first factor, the defendant's culpability, "in the general context of determining whether a petitioner is deserving of equitable relief." *Waifersong, Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992). "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings. *Roby v. Elite Sec. Consultants, LLC*, Ohio N.D. No. 5:19-cv-1631, 2019 U.S. Dist. LEXIS 221604, *4 (December 27, 2019).

"In the absence of proper service, a defendant is under no obligation to respond to a complaint." *Buoscio v. Jackson Nat'l Life Ins. Co.*, S.D. Ohio No. 2:09-cv-1133, 2010 U.S. Dist. LEXIS 42345, *6 (April 21, 2010). Further, "lack of notice and sufficient service of process"

4

ultimately leads to a lack of due process" and renders any default judgment void. *Deutsche Bank Nat'l Trust Co. v. Rogan (In re Allen)*, 417 B.R. 850, 853-854 (E.D. Ky. 2009)

Here, Plaintiff alone is responsible for his failure to properly serve Defendant Peled and that failure cannot be reasonably interpreted as Defendant Peled evincing either an intent to thwart or a reckless disregard for these proceedings. Since Defendant Peled was never properly served, she was never under a duty to respond to Plaintiff's Complaint and any default judgment entered against Defendant would be void. *Id.*

Pursuant to Fed. R. Civ. P. 4(l)(2)(A) and 4(f)(1), service may be made and proved in a place not within any judicial district of the United States by internationally agreed means of service, such as the Hague Convention. Specifically, Fed. R. Civ. P. 4(f)(1) states:

> Unless federal law provides otherwise, an individual — other than a minor, an incompetent person, or a person whose waiver has not been filed — may be served at a place not within any judicial district of the United States:
>
> (1)    by any **internationally agreed means of service** that is reasonably calculated to give notice, such as those authorized by the **Hague Convention on the Service abroad of Judicial and Extrajudicial Documents**.

(Emphasis added).

Israel, just liked the United States, is a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. *See* Hague Conference on Private Int'l Law, Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17. "The Hague [Service] Convention 'provides for channels of transmission to be used when a judicial or extrajudicial document is to be transmitted from one State Party to the Convention to another State Party for service in the latter'." *In re Metformin Mktg. & Sales Practices Litig.*, D.N.J.

No. 20-2324, 2020 U.S. Dist. LEXIS 140454, *5 (Aug. 6, 2020) (citing Outline of the Hague Service Convention, HCCH, https://assets.hcch.net/docs/f4ccc07b-55ed-4ea7-8fb9-8a2b28549e1d.pdf (last accessed February 21, 2024)).

"The main channel of transmission for which the [Service] Convention provides is through the Central Authority of the Requested State." *Id.* "The [Service] Convention is the exclusive means for valid service of judicial and extrajudicial documents between its signatory countries." *Id.*

"Israel has opted out of the alternative methods of service, leaving transmission of documents through the Director of Courts, i.e., the Central Authority, as the exclusive means of effecting service on an Israeli defendant." *Id.* at **5-6 (*citing* Hague Convention, Declaration of the State of Israel, HCCH, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=405&disp=resdn (last accessed February 21, 2024)).

Indeed, Israel declared, *inter alia*, as follows:

> The State of Israel, in its quality as State of destination, will, in what concerns Article 10, paragraphs b) and c), of the Convention, effect the service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State[.]

Declaration of the State of Israel, 14-08-1972, (b).

### 1. *Plaintiff's attempts to serve Defendant Peled via process servers are defective.*

The State of Israel does not object to the use of private international process servers so long as it is requested "through the Directorate of Courts and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State." *Id.*; *see also In re Metformin Mktg, at *6 (*"the State of Israel does not prohibit the use of a private international process server, such as CFS, so long as CFS's authority is limited

to forwarding documents to the Central Authority of Israel and is otherwise consistent with the Hague Convention"). Here, Plaintiff purports to have attempted to serve Defendant Peled via process servers in Israel but has not provided or filed any verification that these process servers and the process they were charged with serving were properly instituted through the Central Authority of Israel. In fact, the proofs of service for the attempts Plaintiff has made thus far have been completed solely on court-provided forms, none of which bear any indication of service having been attempted (let alone perfected) through proper channels through the Israeli Central Authority.

   2. *Plaintiff's attempts to serve Defendant Peled via postal channels are defective.*

Similarly, the State of Israel does not object to service by postal channels as provided for in Article 10(a) of the Convention.[3] *See* Declaration and Art. 10 Hague Convention on Service. While the United Supreme Court expressly stated that the Convention does not "affirmatively authorize[] service by mail", the Court further stated that the Convention provides that "as long as the receiving state does not object, the Convention does not 'interfere with… the freedom' to serve documents through postal channels. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017).

"In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Id.* (internal citations omitted).

The applicable "otherwise-applicable law" is set forth in Federal Rules of Civil Procedure 4(f)(2)(C)(ii): "using any form of mail that the **clerk addresses** and sends to the individual and that requires a signed receipt." *See Wanke v. Invasix Inc.*, M.D. Tenn. No. 3:19cv-0692, 2020 U.S.

---

[3] Israel only made reservations/declarations as related to Article 10(b) and Article 10(c). *See* Declaration https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=405&disp=resdn.

Dist. LEXIS 87899 22 (May 19, 2020) (explaining that the manner for sending service by mail under the Federal Rules pursuant to *Water Splash*'s "otherwise-applicable law" rule is through Rule 4(f)(2)(C)(ii), requiring mail **sent by the clerk**) (emphasis added). In the recent case of *Pen Pal, LLC v. Mizra*, S.D. Ohio No, 2:23-cv-2871, 2023 U.S. Dist. LEXIS 220950 (Dec. 12, 2023), this court stated that "Rule 4(f)(2)(C)(ii) makes clear that mail service must be issued by the Clerk of Court, not by a private process server." It further quoted the following: "The rule requires that the mail must be addressed and sent to the party to be served by the clerk of the court. Service by mail is improper, therefore, if addressed and dispatched by the plaintiff." *Id.* (quoting Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1134 (4th ed.)).

Further, pursuant to the Southern District of Ohio Local Rules, "a request by a party to the Clerk to serve process in foreign county by mail under Fed. R. Civ. P. 4(f)(2)(C)(ii) shall be accompanied by a certificate of the trial attorney or an affidavit of a party proceeding pro se that the attorney or party has determined that service by mail **is authorized by the domestic law of the country in which service is to be made**." *See* S.D. Ohio Civ. R. 4.4. (emphasis added).

Here, Plaintiff's personal Israeli process server, as well as his Ohio confederate, both purported to send copies of the Complaint and summons to Defendant Peled on their own rather than through the Clerk of Courts. See ECF No. 4. Regardless of whether Israel permits service of process via postal channels[4], Plaintiff's service attempts in this regard failed to comply with other controlling federal law and are, therefore, defective.

---

[4] The Israeli Civil Procedure Regulations 5779-2018 allows service by mail, but it must be sent to the addressee himself. *See* Israel's Civil Procedure Regulations 5779-2018 Article 163(a); see also E*mpyrean Med. Sys. Inc. v. Iluz*, S.F. Fla. No. 2-81561-CIV-CANNON/Reinhart, 2023 U.S. Dist. LEXIS 146571, *7-8. (Aug. 21, 2023). Here Plaintiff did not deliver the copies of the Complaint and summons to Defendant Peled directly and did not provide any delivery receipt with Defendant Peled's signature.

Further, Article 163(b) of the Israel Civil Procedure Regulations 5779-2018 provides that the addressee can be served at his residence so long as it is left to one of his/her family members who lives with him/her there and who appears to

### C. Defendant Peled has several meritorious defenses to both Plaintiff's Complaint and the entry of default.

"In determining whether a defaulted defendant has a meritorious defense 'likelihood of success is not the measure'." *United Coin Meter Co. Seabord C. Railroad*, 705 F.2d 839, 845 (6th Cir. 1983) (internal citations omitted). "Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *Id.* In fact, a "defendant does not have to demonstrate a likelihood of success on the merits; rather, this inquiry focuses on 'the determination of whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Big Burger, Inc. v. Big Burgz, LLC*, 2020 U.S. Dist. LEXIS 200630, *18-19 (citing and quoting *South Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 777 (6th Cir. 2005); *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 843 (6th Cir. 2011)). The test, therefore, is "not whether the defendant will win at trial, but rather whether the facts alleged by the defendant would constitute a meritorious defense if true." *Id.* (quoting *In re Park Nursing Ctr., Inc.*, 766 F.2d 261, 264 (6th Cir. 1985)). "A defense need not be supported by detailed factual allegations to be deemed meritorious." *Id.* (citing *$22,050.00 U.S. Currency*, 595 F.3d at 326). "Thus, even conclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes*, 663 F.3d at 843 (citation omitted).

Improper service is certainly a reason for excusable neglect. *Davis v. Bank of N.Y.*, E.D. Mich. No. 0612534, 2008 U.S. Dist. LEXIS 23603, *3 (March 18, 2008). In *Davis*, the Michigan Eastern District Court found that, the defendant's actions "were not precipitated by reckless action or an intent to thwart judicial proceedings, but rather improper service." *Id.* The *Davis* court further

---

be 18 years of older. Here, the summons and complaint were left with no one, to a Defendant Peled's former residence that, as indicated by the process server appeared "vacant." ECF No. 4 at 10.

Accordingly, none of Plaintiff's attempts constitute good service under Israeli law.

found that the defendant had "several meritorious defenses it intend[s] to pursue if this default … is set aside." *Id.* Finally, the court concluded, that "it is preferable to try this matter on the merits rather than rely on the sanction default." *Id.*

Defendant Peled has several meritorious defenses to Plaintiff's Complaint. Most notably for instant purposes and as set forth above, Plaintiff has yet to properly serve her with his Complaint and summons (improper service of process). Accordingly, Defendant Peled has no obligation at all to respond—whether by motion or pleading—to Plaintiff's allegations. *See Buoscio, supra*; *see also Deutsche Bank, supra*.

While she does not believe she has any present obligation to raise available defenses given the lack of service, in the interest of both caution and the spirit of transparency, Defendant Peled states that, at minimum, the following defenses presently exist to the claims raised by Plaintiff against her:

**Lack of subject-matter jurisdiction**. This Court lacks subject-matter jurisdiction over Plaintiff's apparent claim that he should be awarded custody of his children (ECF No. 1 at 2 ¶6, 4 ¶16(b)) pursuant to "the so-called domestic-relations exception to federal diversity jurisdiction [which] deprives federal courts of jurisdiction to adjudicate "[] cases involving the issuance of a divorce, alimony, or child custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 791-792 quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992); *see* also *Edwards v. Ky. Fam. Court*, 2023 U.S. App. LEXIS 15382, at *2 (6th Cir. 2023)( "[f]ederal courts have no jurisdiction to resolve domestic relations disputes involving child custody or divorce.")(internal citations omitted).

**Lack of personal jurisdiction**.  Plaintiff's tort-based Second, Third, Fourth, Fifth, and Sixth Causes of Action are all predicated on alleged acts which Plaintiff admits occurred *in Israel*.

As such, none of the acts Plaintiff believes give rise to damages or any other claim for relief can satisfy the long-arm requirements to provide personal jurisdiction over Defendant Peled *in Ohio*.

In a diversity case, federal courts must apply both the state long-arm statute and the limits of the Constitutional Due Process Clause in determining whether personal jurisdiction exists over a defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Ohio's long-arm statute does not extend to the constitutional limits of the Due Process Clause; therefore, this becomes a threshold issue to determine jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

Indeed, the Ohio long-arm's statute, ORC §2307.382(A) provides*, inter alia*, that

> [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's ***
> **(3)** Causing tortious injury by an act or omission in this state;
> **(4)** Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> ***
> **(6)** Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;
>
> **(7)** Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which the person commits or in the commission of which the person is guilty of complicity.

None of the instances provided for in the Ohio long-arm's statute apply here. Plaintiff admits that the alleged tortious acts occurred in Israel—outside of Ohio—and Plaintiff does not allege that Defendant Peled is conducting business or activities in Ohio.

**Failure to state a claim upon which relief can be granted**. Plaintiff's First Cause of Action attempts to utilize the 1980 Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, 22 USC §9001 et seq. (ICARA) to have this Court order, amongst other relief, his children's return to the United States from Israel. However, ICARA only permits a petition for the return of children pursuant to the 1980 Hague Convention to be brought in a court which has jurisdiction " in the place where the child is located at the time the petition is filed." 22 USC §9003(b). Since Plaintiff admits (ECF No. 1 at 9-12) that his children are presently in Israel, this Court cannot afford Plaintiff any relief.

**Res Judicata/Collateral Estoppel**. Plaintiff admits in his Complaint that the issue of which country was the more appropriate forum in which to determine custody issues was fully litigated in Ohio domestic relations court and when he lost his claim for Ohio to retain that authority, Plaintiff appealed that decision and lost (ECF No. 1 at 8-9. ¶¶34-28). Further, Plaintiff also admits that he instituted and fully litigated (and ultimately lost in the Israeli intermediary appellate court and Israeli Supreme Court) a 1980 Hague Convention abduction claim in Israel related to his children and the same facts he now attempts to raise here. As such, any of those same claims he now raises before this Court are barred by res judicata/collateral estoppel.

**D. Plaintiff will not be prejudiced by this Court setting aside the entry of default.**

Plaintiff will not be prejudiced by this Court vacating its entry of default. Indeed, "[m]ere delay in satisfying a plaintiff's claim, if it should succeed a trial, is not sufficient prejudice to require denial of a motion to set aside [an entry] of default." *United Coin* at 845. Further, as more fully set forth above, because Plaintiff has not properly served Defendant Peled and therefore Defendant Peled's time to respond to Plaintiff's lawsuit has not begun to run. Accordingly, there

is no delay and even if this Court would find that there is a delay—then it is solely due to Plaintiff's failure to obtain proper service upon Defendant Peled.

### III.   <u>CONCLUSION</u>

For all of the reasons listed above, Defendant Peled prays that this Honorable Court set aside its February 8, 2024 entry of default as related to her because 1) there were no culpable conduct on Defendant Peled's part because she was never properly served with Plaintiff's complaint; (2) Defendant Peled has several meritorious defenses, and (3) Plaintiff will not be prejudiced by this Court vacating its entry of default.

Defendant Peled further states that the within request is made without prejudice to Defendant Peled's rights to assert all available defenses to the Complaint, including, without limitation, insufficient service of process, lack of personal jurisdiction, lack of subject matter jurisdiction, *res judicata*, and failure to state a claim upon which relief can be granted.

Finally, Defendant Peled prays that, in addition to vacating the entry of default, this Court awards any other relief, including attorney's fees, that this Court deems to be just, legal, and equitable.

Respectfully submitted,

**ZASHIN LAW, L.L.C.**

*/s/ Christopher R. Reynolds*
**CHRISTOPHER R. REYNOLDS (0082107)**
5900 Landerbrook Drive, Suite 280
Landerbrook Corporate Center 1
Cleveland, Ohio 44124
E: crr@zashinlaw.com
P: 216-480-3001
F: 216-480-3002

Attorney for Defendant,
**YAEL PELED**

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2024, a copy of the foregoing *Motion to Set Aside February 8, 2024 Entry of Default* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Christopher R. Reynolds
**CHRISTOPHER R. REYNOLDS (0082107)**
crr@zashinlaw.com
Attorney for Defendant,
**YAEL PELED**