**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ITZIK PELED,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:23-cv-2224** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **ANTONY BLINKEN,** *et al.*, | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter comes before this Court on Defendant Yael Peled's Motion to Set Aside Default (ECF No. 23). For the reasons set forth below, Defendant's motion is **GRANTED**.

## I.      BACKGROUND

In July 2023, Plaintiff, a United States citizen, filed a Complaint against his wife, Yael Peled; four Israeli officials; the State of Israel; Antony Blinken, the United States Secretary of State; and Thomas R. Nides, the Former United States Ambassador to Israel. (ECF No. 1). Plaintiff's allegations stem from Defendant Yael Peled's disappearance with the couple's children at the end of a roughly two-week vacation in Israel. (*Id.*). In his Complaint, Plaintiff details the series of events that followed the disappearance of his wife and children, including an Israeli judge's entry of an *ex parte* protective order against Plaintiff, a "no-exit" order preventing Plaintiff from leaving the country, and the initiation of Rabbinical divorce proceedings. (*Id.*). Throughout the Complaint, Plaintiff accuses several of the Defendants of being devoted to a "radical feminist ideology." (*Id.*). He brings claims for: abduction, tort compensation, "anti-suit," loss of filial consortium, intentional infliction of emotional distress, illegal confinement, racketeering, and a *Bivens* claim. (*Id.* at 9-31).

1

On September 1, 2024, Plaintiff filed a proof of service, dated August 14, 2023, which indicated that an Israeli process server attempted to serve Defendant Peled at her place of work on August 2, 2024.  (ECF No. 4 at 4).  The process server "left [the summons and Complaint] on the desk with receptionist and filmed it."  (*Id.*).  He also tried to serve Defendant at a home address but noted that the residence was "vacant."  (*Id.*).  On the same day, Plaintiff also filed a proof of service dated August 25, 2023, indicating that an individual named Nadia Emilien-Kamali mailed a copy of the summons and Complaint from Columbus, Ohio to the same home where service was attempted in Israel via USPS.  (*Id.* at 1-2).

On November 16, 2023, in the absence of a timely response from Defendant, Plaintiff moved this Court for a default judgment against Defendant Peled.  (ECF No. 9).  This Court rejected Plaintiff's request, explaining that he must first seek an entry of default from the Clerk of Court.  (ECF No. 10).  Plaintiff requested default judgment against Defendant Peled again on December 28, 2023, (ECF No. 12), and this Court again informed him that he must first seek entry of default, (ECF No. 15).  Finally, on February 7, 2024, Plaintiff applied to the Clerk of the Court for an entry of default.  (ECF No. 17).  He contemporaneously filed another proof of service, indicating that an individual named Mordechai Peled attempted to serve Yael Peled at a court proceeding in Israel.  (ECF No. 18).  The Clerk entered default on February 8, 2024.  (ECF No. 20).  Defendant filed her Motion to Set Aside Default on February 27, 2024.  (ECF No. 23).  That motion is now ripe for this Court's consideration.

## II.    STANDARD OF REVIEW

When a party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  FED. R. CIV. P. 55(a).  An entry of default is a prerequisite to obtaining a default

2

judgment under Rule 55(b). *See Shepard Claims Serv. Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) (stating "entry of default is . . . the first procedural step on the road to obtaining a default judgment").

A court may set aside an entry of default for good cause. FED. R. CIV. P. 55(c). District courts have significant discretion under the good cause standard to set aside an entry of default, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), especially as "[t]rials on the merits are favored in federal courts." *Shepard Claims*, 796 F.2d at 193 (quoting *Union Coin*, 705 F.2d at 846). A court must set aside a default, however, when the Defendant was not properly served. *O.J. Distrib.*, 340 F.3d at 355. In the face of improper service, courts need not considers the factors usually considered in applying the good cause standard. *See id.*

### III.     ANALYSIS

In her Motion, Defendant argues that the default entered by the Clerk on February 8, 2024, ought to be set aside because Plaintiff's several attempts to effectuate service have all been improper. (ECF No. 23 at 8-10). Plaintiff, who is proceeding *pro se*, responds that a process server's attempts to leave documents with Defendant's secretary and at a vacant former address, a private individual's attempt to serve Defendant at a court proceeding, and Plaintiff's attempts to serve Defendant by mail, ought to have been sufficient. (ECF No. 26 at 1-3).

Federal Rule of Civil Procedure 4(f) "represents a comprehensive provision for service of the summons and the complaint on individuals, other than infants or incompetents, in a foreign country." 4B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1133 (4th ed.). It provides that:

3

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents . . .

Fed. R. Civ. P. 4(f). The "[u]se of Convention procedures . . . is mandatory" when documents must be transmitted abroad to a Convention signatory in order to effect service. 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1133. Israel is one such signatory. *See Treeline Inv. Partners, LP v. Koren*, 2007 WL 1933860, at *5 (S.D.N.Y. July 3, 2007) ("Since Israel and the United States are both signatories to the Hague Service Convention, service of process on a defendant in Israel is governed by the convention.").

The primary method of service under the Hague Convention is through a country's "Central Authority," designated pursuant to the Convention. *Esposito v. TipRanks, Ltd.*, 2024 WL 68528, at *3 (S.D.N.Y. Jan. 4, 2024). Although Articles 10(b) and 10(c) of the Hague Convention do allow for some other forms of personal service, Israel objected to those provisions at the time that it entered into the Convention, stating that "it would instead 'effect the service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State.'" *Id.* (quoting *Declaration/Reservation/Notification*, Hague Conf. on Priv. Int'l L., https://www.hcch.net/en/notifications/?csid=405&disp=resdn (last accessed Apr. 30, 2024). In other words, Israel forbids the sort of direct personal service that Plaintiff attempted on several occasions here. *See Doe I v. State of Israel*, 400 F. Supp. 2d 86, 103 (D.D.C. 2005) (finding that leaving service papers with employees at defendants' places of employment was insufficient to effect service under Hague Convention); *see also In re Metformin Mktg. & Sales Pracs. Litig.*,

4

2020 WL 4530051, at *3 (D.N.J. Aug. 6, 2020) (finding "that the State of Israel does not prohibit the use of a private international process server," as long as its "authority is limited to forwarding documents to the Central Authority of Israel and is otherwise consistent with the Hague Convention."). Accordingly, Plaintiff's attempts to serve Defendant at her place of work, her former address, and at a court proceeding were insufficient.

Nor did Plaintiff properly serve Defendant via mail. Article 10(a) of the Hague Convention does not "affirmatively authorize[] service by mail," but it also "does not 'interfere with . . . the freedom' to serve documents through postal channels." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017). "In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Id.* As Plaintiff and Defendant both point out, Israel does not object to service by postal channels under the Convention. *Declaration/Reservation/Notification*, Hague Conf. on Priv. Int'l L., https://www.hcch.net/en/notifications/?csid=405&disp=resdn (last accessed Apr. 30, 2024). But service by mail must still comply with "otherwise-applicable law." The "'otherwise-applicable' law for serving a business entity in Israel under the Federal Rules . . . is service by Rule 4(f)(2) or (3)"[1] and "the manner for sending service by mail under the Federal Rules pursuant to *Water Splash*'s 'otherwise-applicable law' rule is through Rule 4(f)(2)(C)(ii), requiring mail sent by the clerk." *Wanke v. Invasix Inc.*, 2020 WL 2542594, at *7 (M.D. Tenn. May 19, 2020) (citing 1 Moore's Federal Practice–Civil § 4.52[2][d] (2020)). Here, Plaintiff's attempt at service was insufficient because the mailing was sent by a private individual, Nadia Emilien-Kamali, not the

---

[1] This Court has not been asked to consider ordering a different method of service under Federal Rule of Civil Procedure 4(f)(3).

Clerk of this Court.  *See Pen Pal, LLC v. Mizra*, No. 2:23-CV-2871, 2023 WL 8594328, at *2 (S.D. Ohio Dec. 12, 2023) ("Rule 4(f)(2)(C)(ii) makes clear that mail service must be issued by the Clerk of Court, not by a private process server."); *see also* 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1134 ("The rule requires that the mail must be addressed and sent to the party to be served by the clerk of the court. Service by mail is improper, therefore, if addressed and dispatched by the plaintiff rather than by the clerk of the court.").[2]

Because each of Plaintiff's attempts to effect service were insufficient, this Court does not have personal jurisdiction over Defendant and must set aside the default.  *See O.J. Distrib.*, 340 F.3d at 355.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Set Aside the February 8, 2024 Default is **GRANTED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  May 21, 2024**

---

[2] This Court acknowledges that on April 17, 2024, Plaintiff filed a "Status Report" in which he explained that he had attempted to serve four Israeli officials and the State of Israel by mailing envelopes sealed by the Clerk of Court, containing Hague Convention Requests for Service Abroad of Judicial or Extrajudicial Documents.  (ECF No. 36).  Nonetheless, Plaintiff's Status Report indicates that the Israeli Director of Courts rejected all five sets of documents because "compliance with the execution of the service request in this matter would infringe upon the sovereignty of the State of Israel."  (*Id.* at 5).  Given that Defendant Peled is a private individual, not a government official, and is, therefore, differently situated than the official defendants, the Israeli government's communication has no bearing on this Court's analysis.