# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ITZIK PELED, | : | |
| Plaintiff, | : | Case No. 2:23-cv-2224 |
| v. | : | Chief Judge Algenon L. Marbley |
| ANTONY BLINKEN, *et al.*, | : | Magistrate Judge Kimberly A. Jolson |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before this Court on Plaintiff Itzik Peled's Motion for an Order Affirming Valid Service (ECF No. 39), which this Court construes as a Motion for Alternative Service, and his Motion to Reargue Decision on Default (ECF No. 40), which this Court construes as a Motion for Reconsideration. Plaintiff's Motions are **DENIED**.

### I. BACKGROUND

As this Court has summarized before, in July 2023, Plaintiff, a United States citizen, filed a Complaint against his wife, Yael Peled; four Israeli officials; the State of Israel; Antony Blinken, the United States Secretary of State; and Thomas R. Nides, the Former United States Ambassador to Israel. (ECF No. 1). Plaintiff's allegations stem from Defendant Yael Peled's disappearance with the couple's children at the end of a roughly two-week vacation in Israel. (*Id.*). In his Complaint, Plaintiff details the series of events that followed the disappearance of his wife and children, including an Israeli judge's entry of an *ex parte* protective order against Plaintiff, a "no-exit" order preventing Plaintiff from leaving the country, and the initiation of Rabbinical divorce proceedings. (*Id.*). Throughout the Complaint, Plaintiff accuses several of the Defendants of being devoted to a "radical feminist ideology." (*Id.*). He brings claims for: abduction, tort compensation,

1

"anti-suit," loss of filial consortium, intentional infliction of emotional distress, illegal confinement, racketeering, and a *Bivens* claim. (*Id.* at 9-31).

On September 1, 2023, Plaintiff filed a proof of service, dated August 14, 2023, which indicated that an Israeli process server attempted to serve Defendant Peled at her place of work on August 2, 2023. (ECF No. 4 at 4). The process server "left [the summons and Complaint] on the desk with receptionist and filmed it." (*Id.*). He also tried to serve Defendant at a home address but noted that the residence was "vacant." (*Id.*). On the same day, Plaintiff also filed a proof of service dated August 25, 2023, indicating that an individual named Nadia Emilien-Kamali mailed a copy of the summons and Complaint from Columbus, Ohio to the same home where service was attempted in Israel via USPS. (*Id.* at 1-2).

Plaintiff applied to the Clerk of the Court for an entry of default on February 7, 2024 (ECF No. 17), and the Clerk entered default on February 8, 2024 (ECF No. 20). Defendant then filed a Motion to Set Aside Default, which this Court granted on grounds of insufficient service. (ECF No. 37). Plaintiff now moves this Court, through two somewhat overlapping Motions, to either affirm the validity of his earlier attempts at service by process server or email or authorize alternative service to Defendant Peled's office's general email address. (ECF Nos. 39, 40).

## II. LAW & ANALYSIS

### A. Validity of Service

Motions for reconsideration serve a limited function and are justified only when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Doyle v. Pollit*, 2010 WL 658652, at *1 (S.D. Ohio Feb. 22, 2010). Motions for reconsideration are "not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Id.* Relief is granted if

2

the previous order presents a clearly erroneous legal or factual issue. *King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell*, No. 2009 WL 5066912, at *1 (S.D. Ohio Dec. 22, 2009).

Despite this Court previously explaining why both of Plaintiff's attempts at service on Defendant Peled—by process server and by mail not sent by the Clerk of this Court—were insufficient, Plaintiff insists that personal service at Defendant's place of work was sufficient and "binding." The instant Motion to Reargue (ECF No. 40), construed as a Motion for Reconsideration, presses arguments already addressed and rejected by this Court; Plaintiff has evidently failed to heed this Court's earlier caution to "read this Court's orders . . . very carefully, as failure to comply with the rules explained to him risks his lawsuit's viability." (ECF No. 15). Nonetheless, this Court will explain why it does not believe that it committed a legal error in granting Defendant's Motion to Set Aside Default.

As this Court explained in its earlier Order, Federal Rule of Civil Procedure 4(f) "represents a comprehensive provision for service of the summons and the complaint on individuals, other than infants or incompetents, in a foreign country." 4B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1133 (4th ed.). In its entirety, it provides that:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

3

      (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
      (C) unless prohibited by the foreign country's law, by:

           (i) delivering a copy of the summons and of the complaint to the individual personally; or
           (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

    (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

This Court previously explained that a plaintiff filing suit in a United States court cannot effectuate service in Israel by process server, and, alternatively, that any attempts at service by mail must be sent by the clerk of the court in which the case is filed, not by private individuals. (ECF No. 37 at 4-6). Nonetheless, Plaintiff curiously suggests this Court based its decision only the latter—the reasons that Ms. Kamali's mailing to Defendant Peled was insufficient. And he now asserts that the mailing was simply a superfluous "courtesy service," and the real service was the process server's attempt at Defendant Peled's workplace. Plaintiff believes that FRCP 4(f)(2)(A) "means that as long as the service of process complied with the laws of Israel's own domestic rules for service of process in their own courts, then the service is valid in the US federal court." (ECF No. 40 at 2). And because process servers are appropriate for use in Israeli lawsuits, Plaintiff argues that so too are they appropriate for lawsuits filed in United States courts against defendants located in Israel.

But it could not be clearer that Israel "has not consented to personal service directly upon its citizens under Article 10(c) of the Hague Convention." *Honig v. Cardis Enterprises Int'l N.V.*, 2016 WL 6304695, at *7 (E.D.N.Y. Oct. 27, 2016). Although Articles 10(b) and 10(c) of the Hague Convention do allow for some other forms of personal service, **Israel objected to those provisions at the time that it entered into the Convention, stating that "it would instead**

**'effect the service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State.'"** *Esposito v. TipRanks, Ltd.*, 2024 WL 68528, at *3 (S.D.N.Y. Jan. 4, 2024) (quoting *Declaration/Reservation/Notification*, Hague Conf. on Priv. Int'l L., https://www.hcch.net/en/notifications/?csid=405&disp=resdn (last accessed Apr. 30, 2024). **Thus, Israel forbids the sort of direct personal service that Plaintiff attempted here.** *See e.g., Doe I v. State of Israel*, 400 F. Supp. 2d 86, 103 (D.D.C. 2005) (finding that leaving service papers with employees at defendants' places of employment was insufficient to effect service under Hague Convention); *see also In re Metformin Mktg. & Sales Pracs. Litig.*, 2020 WL 4530051, at *3 (D.N.J. Aug. 6, 2020) (finding "that the State of Israel does not prohibit the use of a private international process server," but permits it only if the process server's "authority is limited to forwarding documents to the Central Authority of Israel and is otherwise consistent with the Hague Convention.").

Neither Israel's nor the United States' rules of civil procedure dictate a different result. The "[u]se of Convention procedures . . . is mandatory" when documents must be transmitted abroad to a Convention signatory, like Israel, in order to effect service. 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1133; *see Treeline Inv. Partners, LP v. Koren*, 2007 WL 1933860, at *5 (S.D.N.Y. July 3, 2007) ("Since Israel and the United States are both signatories to the Hague Service Convention, service of process on a defendant in Israel is governed by the convention."); *Doe I*, 400 F.Supp.2d at 102-03 (explaining that when the Hague Convention applies, "is recognized as the only acceptable way to serve foreign citizens.") (citing *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct.*, 482 U.S. 522, 534 n. 15 (1987)). **Put succinctly, the Hague Convention, and Israel's objections thereto, control this**

5

**circumstance—where a plaintiff in United States federal court wishes to effectuate service on an individual within Israel.** By its own terms, Rule 4(f)(2), on which Plaintiff relies, only comes into play "if there is no internationally agreed means, or if an international agreement allows but does not specify other means." And the Hague Convention and Israel's objections constitute an internationally agreed means that precludes personal service in this circumstance. Plaintiff's attempt at personal service was, therefore, insufficient and his Motion to Reargue is **DENIED.**

### B. Substitute Service

Plaintiff Peled also asks this Court to authorize alternative service by email to Defendant Peled's general office email address. (ECF No. 39). Indeed, Plaintiff represents that Ms. Kamali already attempted service by email to this address, but Plaintiff offers to send another email, should this Court find it necessary. (*Id.*). Defendant responds, arguing that it would be unjust for this Court to allow alternative service, as Plaintiff simply refuses to comply with the service methods allowed for by international agreement. (ECF No. 41 at 4).

"Rule 4(f)(3) provides that service in a foreign country can be made as directed by order of the federal court." Wright & Miller, § 1134. Courts have broad discretion to order alternative means of service under Rule 4(f)(3), so long as the method is not prohibited by international agreement and comports with due process. *See Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 260-61 (S.D. Ohio 2013).

As a threshold matter, this Court first considers whether Plaintiff is required to attempt already-authorized means of service before seeking authorization for alternative service under Rule 4(f)(3). Courts in this district tend to conclude that, "at least as a technicality," Rule 4(f)(3) may "be invoked without first considering Rules 4(f)(1) and 4(f)(2)," *AmaTech Grp. Ltd. v. Fed. Card Servs.*, LLC, 2021 WL 3674821, at *2 (S.D. Ohio Aug. 19, 2021), although the Sixth Circuit

has not weighed in on the issue. *See OCLC, Inc. v. Archive*, 2024 WL 1240931, at *2 (S.D. Ohio Mar. 22, 2024) ("The Court agrees that such exhaustion is not required."). In other words, "there is not a hierarchy among the subsections of Rule 4(f)." *Lexmark*, 295 F.R.D. at 261; *but see Midmark Corp. v. Janak Healthcare Private Ltd.*, 2014 WL 1764704, at *2 (S.D. Ohio, May 1, 2014) (characterizing Rule 4(f)(3) as a "safety valve for unanticipated situations.").

But this technicality does not mean a district court loses its discretion with respect to granting or denying requests for alternative service. Indeed, another district court within the Sixth Circuit recommends considering Rule 4's advisory committee notes, which "emphasize that alternative service under 4(f)(3) is justified only when there is a good reason for deviating from the usual methods of international service of process, such as cases of urgency or when following internationally prescribed methods of service would be futile." *Slay v. IB Travelin, Inc.*, 2019 WL 572877, at *3 (W.D. Tenn. Feb. 12, 2019). That court persuasively reasoned that "[b]ecause the breadth of Rule 4(f)(3) could allow litigants to bypass 4(f)(1) and 4(f)(2) routinely," it is evident "Congress trusted courts not to authorize alternative service of process under 4(f)(3) so regularly that regard for international comity would become a nullity." *Id.*

Given the circumstances here, this Court exercises its discretion to **require Plaintiff Peled at least to attempt service that complies with internationally agreed means by directing service: (1) through Israel's Directorate of Courts; or (2) through mail sent directly to the Defendant by this Court's Clerk, in compliance with Rule 4(f)(2)(c)(ii).** Plaintiff's brief makes evident that he is aware of both options, and yet he has attempted neither with respect to Defendant Peled. (ECF No. 39). He argues that his ex-wife, who he characterizes as "a child abductor" and "not to be trusted," will surely refuse to accept proper service if an envelope bears the address of either this Court or the Israeli Directorate of Courts, and that, therefore, service

7

through these means is sure to be futile. (*Id.*; ECF No. 42). But these are speculative concerns because Plaintiff has not yet tried. Granted, Defendant Peled is aware of this lawsuit, as her attorney has appeared to move to set aside default and respond to one of Plaintiff's instant Motions. But she disclaims attempting to evade Plaintiff Peled's earlier improper service attempts and indicates a willingness to proffer evidence showing that her current address is on file with the Israeli courts. (ECF No. 41 at 6). Accordingly, "even if other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *C & F Sys., LLC v. Limpimax, S.A.*, 2010 WL 65200, at *2 (W.D. Mich. Jan. 6, 2010).

Plaintiff's Motion for Order Affirming Service or, in the alternative, Alternative Service (ECF No. 39), is **DENIED WITHOUT PREJUDICE**. Should Plaintiff's attempts to serve Defendant through either of the means laid out above prove unsuccessful, he is not precluded from filing another request for substitute service.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motions are **DENIED**. (ECF Nos. 39 and 40).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 5, 2024**