**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ITZIK PELED** | ) | **Case No. 2:23-cv-2224** |
| | ) | |
| **Plaintiff,** | ) | **Chief Judge Algenon L. Marbley** |
| | ) | |
| **v.** | ) | **Magistrate Judge Kimberly A. Jolson** |
| | ) | |
| **YAEL PELED,** *et al.* | ) | **DEFENDANT PELED'S MOTION TO** |
| | ) | **DISMISS** |
| **Defendants.** | ) | |
| | ) | |

Now comes Defendant **YAEL PELED**, by and through counsel, and hereby submits her

Motion to Dismiss.

Respectfully submitted,

**ZASHIN LAW, LLC**

*/s/ Christopher R. Reynolds*
**CHRISTOPHER R. REYNOLDS (0082107)**
5900 Landerbrook Drive, Suite 280
Landerbrook Corporate Center 1
Cleveland, Ohio 44124
E: crr@zashinlaw.com
P: 216-480-3001
F: 216-480-3002

Attorney for Defendant,
**YAEL PELED**

1

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of October 2024, a copy of the foregoing *Defendant Peled's Motion to Dismiss* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Christopher R. Reynolds*
**CHRISTOPHER R. REYNOLDS (0082107)**
crr@zashinlaw.com

Attorney for Defendant,
**YAEL PELED**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES............................................................................................... ii

SUMMARY OF ARGUMENT........................................................................................... 3

BACKGROUND ............................................................................................................... 5

STANDARDS OF REVIEW ............................................................................................. 7

    12(b)(1) lack of subject-matter jurisdiction .................................................................. 7

    12(b)(2) lack of personal jurisdiction.......................................................................... 8

    12(b)(6) failure to state a claim ................................................................................. 13

LAW AND ARGUMENT................................................................................................. 14

I.     This Court lacks subject-matter jurisdiction over, and Plaintiff has failed to state a claim as it relates to, the 1980 Hague Convention on the Civil Aspects of International Parental Child Abduction and the International Child Abduction Remedies Act. ........................................... 14

II.    This Court lacks subject-matter jurisdiction over, and Plaintiff has failed to state a claim as it relates to, any alleged violation of federal criminal statutes because no private cause of action exists. .................................................................................................................. 17

III.   Because this Court lacks subject-matter jurisdiction over, and Plaintiff has failed to state a claim as it relates to, the 1980 Hague Convention and any federal criminal statute in this matter, Supplemental Jurisdiction fails because the Federal Questions Claims must be dismissed. ................................................................................................................. 19

IV.   This Court lacks subject-matter jurisdiction to entertain Plaintiff's request to be awarded custody of his children or an award of child support. ............................................................. 22

i

V.     Because this Court lacks subject-matter jurisdiction over his custody and child support claims, Plaintiff cannot state a claim upon which relief can be granted for anti-suit injunctive relief. ........................................................................................................................ 25

VI.    Because the PKPA does not include a federal cause of action, this Court lacks subject-matter jurisdiction and Plaintiff cannot state a claim upon which relief can be granted. ......... 27

VII.    This Court lacks personal jurisdiction over Defendant Peled as it relates to Plaintiff's state-law tort claims and Plaintiff fails to state claims upon which relief can be granted. ....... 28

CONCLUSION .................................................................................................................... 38

## TABLE OF AUTHORITIES

**CASES**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)........... 13

*Am. Postal Workers Union, AFL-CIO, Detroit Local v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) .................................................................................................................. 18

*Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ...................................................................... 22, 24

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................ 13, 14

*Bass v. Parkwood Hosp.*, 180 F.3d 234, 247 (5th Cir. 1999) ........................................................ 20

*Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) ............................................... 21

*Bauer v. RBX Indus. Inc.*, 368 F.3d 569, 581 (6th Cir. 2004) ....................................................... 8

*Beijing Fito Med. Co. v. Wright Med. Tech., Inc.*, 763 Fed. Appx. 388 (6th Cir. 2019) ............... 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)............................................................ 13

*Bell v. Ohio State Bd. of Trustees*, 10th Dist. No. 06AP-1174, 2007-Ohio-2790, ¶24................. 35

*Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St. 3d 107, 110 (1991)................................. 36

*Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002) ........................................................ 20

*Bowen v. Kil-Kare, Inc*, 63 Ohio St.3d 84, 93 (1992 ................................................................... 33

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 261 (2017)....................................... 9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ....................................... 8, 12, 29, 32

*Campbell v. Air Jam., Ltd.*, 863 F.2d 1, 1 (2d Cir. 1988) .............................................................. 15

*Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) ......................... 19

*Cartwright v. Garner*, 751 F.3d 753, 760 (6th Cir. 2014) ............................................................. 7

*Castelvetere v. Messer*, 611 F. App'x 250, 256 (6th Cir. 2015) ................................................... 21

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 3 (1987)................................................................... 19

*Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998) ..................................................................... 23, 24

iii

*Chambers v. Michigan*, 473 F. App'x 477, 478 (6th Cir. 2012)..................................................... 22

*Chevalier v. Barnhart*, 992 F. Supp.2d 810, 814 (S.D. Ohio, E.D. 2014).................................... 23

*Chevalier v. Estate of Barnhart*, 803 F.3d 789 (6th Cir. 2015) ..................................................... 23

*China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 37 (2d Cir. 1987) ........................ 26

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996) ......................................... 8

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) .......................................................................... 12, 13

*Crawford v. ITT Consumer Financial Corp.*, 653 F.Supp. 1184, 1192 (S.D.Ohio 1986)............ 35

*Crenshaw v. Mooningham*, 8th Dist. Cuyahoga No. 112835, 2024-Ohio-1470, ¶17.................... 34

*Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) ................... 13

*Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) ..................................................... 23

*Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977) .......................... 9

*Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006).......................................... 8

*Debold v. Siesel Distrib., LLC*, 3rd Dist. Seneca No. 22-CV-0198, 2024-Ohio-1851, ¶16 ........... 33

*District of Columbia v. Murphy*, 314 U.S. 441 (1941) ................................................................... 10

*DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) ............................................................. 7

*Doe v. Ross*, No. 94-6572, 1995 U.S. Dist. LEXIS 7560, at *5-*6 (E.D. Pa. 1995) .....................11

*Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988) ................................................................... 23

*Duhart v. Kristan*, No. 1:23-cv-3947-SDG, 2023 U.S. Dist. LEXIS 205107, *2-3 (N.D. Ga. Nov.

  16, 2023)................................................................................................................................... 15

*Eastman v. University of Mich.*, 30 F.3d 670, 673 (6th Cir. 1994)..................................................11

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)................... 13

*Elias v. Elias*, 2013 U.S. Dist. LEXIS 98984, at *24-25 (D. Mass 2013) .................................... 22

*Est. of Q.W. v. Mikonowicz*, No. 3:22-CV-00671-JGC, 2024 U.S. Dist. LEXIS 21910, *2-3 (N.D. Ohio February 8, 2024) ........................................................................................... 21

*Estate of Poole v. Grosser*, 134 Ohio App.3d 386, 391-92, 731 N.E.2d 226 (1st Dist. 1999)28, 29

*Fallang v. Hickey*, 40 Ohio St. 3d 106, 107-108 (1988)................................................. 29

*Fehrenbach v. O'Malley*, 113 Ohio St.3d 18, 2007-Ohio-971, ¶21 ............................................. 33

*Feliciano v. Kreiger* (1977), 50 Ohio St. 2d 69, 71 ...................................................... 36, 37

*Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir. 1981) ...................................... 23

*Flores v. Lathrop*, 2024 U.S. Dist. LEXIS 77178, *3-4 (D.D.C. 2024) ...................................... 18

*Friedrich v. Friedrich*, 78 F.3d 1060, 1063-1064 (6th Cir. 1996) ............................................... 15

*Fuller v. Hofferbert*, 204 F.2d 592, 597 (6th Cir. 1953).................................................11

*Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 251 (1993).................................... 33

*Garmback v. City of Cleveland*, 8th Dist. Cuyahoga No. 110295, 2022-Ohio-1490, ¶43............. 34

*Gau Shan Co. Ltd. v. Bankers Tr. Co.*, 956 F.2d 1349, 1352 (6th Cir. 1992).......................... 25, 26

*Gau Shan*, 956 F.2d at 1352 .................................................................................. 26

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) ........................ 7

*Gilbert v. David*, 235 U.S. 561, 569 (1915) ............................................................... 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).....10, 11, 12, 31, 32

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958).............................................................. 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984) .................... 29, 32

*Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003)................................................ 19

*Hunt v. Toledo Law Dept.*, 881 F.Supp.2d 854, 886 (N.D.Ohio 2012) ........................................ 34

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945) ............................................ 29

*Jackson v. State St. Bank & Trust Co.* 110 Ohio App.3d 388, 395, (2d Dist. 1996) .................... 29

v

*Junior v. de Sousa*, No. 1:21-cv-02232, 2023 U.S. Dist. LEXIS 111875, *5-6 (N.D. Ohio June 27, 2023) ................................................................................................ 15

*Kaiser v. Loomis*, 391 F.2d 1007, 1008 (6th Cir.1968) ................................................. 10

*Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 28 ... 9, 12, 28

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984) .................................................. 29, 32

*Korn v. Korn*, 398 F.2d 689, 691 (3d Cir.1968) ............................................................11

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) .............................. 12

*Kraus v. Galloway Ridge, Inc.*, 9th Dist. Summit No. CV-2015-10-5098, 2015 Ohio Misc. LEXIS 33855, *2-3 ................................................................................................ 29

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C. Cir. 1984)) ...... 26

*Laker Airways*, 731 F.2d at 926-27 ................................................................. 26

*Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 391 (6th Cir. 2020) ............................................ 3

*Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) ........................................................ 15

*Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ................................ 19

*Lozano v. Alvarez*, 572 U.S. 1, 18 (2014) ................................................................ 17

*Lyndon's LLC v. City of Detroit,* No. 23-1985, 2024 U.S. App. LEXIS 17690 (6th Cir. 2024) ... 20

*MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) ................................ 9

*McCarthy v. Lee*, 10th Dist. Franklin No. 21AP-426, 2022-Ohio-1413, ¶6 ................................ 33

*McCulley v. Centria Pshp.,* 1999 Ohio App. LEXIS 4269 at *4-*5 (5th Dist. 1999) .................. 35

*McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999) .................................................... 24

*Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) .......................... 3

*Meminger v. Ohio State Univ.*, 10th Dist. Franklin No. 17AP-489, 2017-Ohio-9290, ¶14 .......... 34

*Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, ¶47 (8th Dist.) .................................................................................................................................. 34

*Mikes v. Kent State University*, 10th Dist. Franklin No. 89AP-749, 1990 Ohio App. LEXIS 971, *4 ........................................................................................................................................... 36

*Miller v. AXA Winterthur Ins.*, 694 F.3d 675, 679 (6th Cir. 2012) .................................................. 9

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940 ................................................................................... 29

*Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) ....................................................................... 3

*Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, (1989) .............................10, 11, 31

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) ........................................... 14

*Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997)............................... 18

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)......................... 8

*Mullins v. Rinks, Inc.* (1971), 27 Ohio App. 2d 45 ................................................................... 36, 37

*N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166-67 (6th Cir. 1989) ........................................ 25

*Nat'l Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 74 (2d Cir. 2023)................................................................................................................................... 15

*Neogen Corp.*, 282 F.3d at 887 ................................................................................................... 8, 9

*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) ....................................... 20

*Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) ............... 20

*Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) .................... 20

*Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (1994) .......................................................... 34

*Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 152-153 .................................................... 35

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).................... 8

*Rockefeller v. U.S. Court of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003).................... 18

*Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960) .......................................................................... 35

*Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) .................................................. 8

*Russ v. TRW, Inc.*, 59 Ohio St.3d 42 (1991) .................................................................................. 34

*Seminatore v. Redmond*, 8th Dist. Cuyahoga No. 54806, 1988 Ohio App. LEXIS 5002, 11 (Dec. 15, 1988) .................................................................................................................................. 34

*Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1216 (6th Cir. 1989) ................................ 9

*Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) ................................................................................ 29

*Smith v. Canadian Pac. Airways, Ltd.*, 452 F.2d 798, 800 (2d Cir. 1971) .............................. 15, 16

*Stark v. City of Memphis*, 2020 U.S. Dist. LEXIS 250141, *13 (W.D. Tenn. 2020) ................... 24

*State, ex rel. Kemper, v. Beecher* (1847), 16 Ohio 358, 363 ......................................................... 36

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ................................................... 20

*Tereshchenko v. Karimi*, 102 F.4th 111, 125 (2d Cir. 2024) .......................................................... 16

*Thompson v. Thompson*, 484 U.S. 174, 175-177, 180-181 (1988) ................................................. 27

*Toledo v. Lowenberg*, 99 Ohio App. 165, 167 (6th Dist. 1955) .................................................... 37

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) .................................................................................................................................. 13

*United States v. Louisville & Nashville RR Co.*, 221 F.2d 698, 701 (6th Cir. 1955) ...................... 3

*United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir. 1985) ........................................................ 21

*UPS Supply Chain Sols., Inc. v. EVA Airways Corp.*, 144 S. Ct. 559 (2024) .............................. 15

*Vaden v. Discovery Bank*, 556 U.S. 49, 60 (2009) ........................................................................ 19

*Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989) ............................................................... 23

*Ward v. Cty. of Cuyahoga*, 721 F.Supp.2d 677, 695 (N.D.Ohio 2010), fn. 8; N.D.Ohio No. 1:03 CV 2075, 2006 U.S. Dist. LEXIS 11913 (Mar. 21, 2006) ......................................................... 34

*Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) ...................................................................... 7, 9

*Whorton v. Cognitians, LLC,* 2019 U.S. Dist. LEXIS 88048, \*7-8 (S.D., Ohio 2019) ................ 18

*Williamson v. Osenton*, 232 U.S. 619, 624 (1914) ...................................................................... 10

*Wilson v. Chatman*, 3d Dist. No. 3-02-38, 2003-Ohio-2818, ¶13 ................................................ 35

*Witcher v. City of Fairlawn*, 113 Ohio App. 3d 214, 217 (9th Dist. 1996) .................................. 37

*Yancy v. Std. Mortg. Corp.*, No. 16-16276, 2017 U.S. Dist. LEXIS 69488, \*4-5 (E.D. La. May 5, 2017) ........................................................................................................................... 20, 21

*Yang v. Tsui*, 416 F.3d 199, 201 (3d Cir. 2005) .......................................................................... 15

*Yeager v. Local Union 20*, 6 Ohio St.3d 369 (1983), syllabus ...................................................... 34

## RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................................................... 12

Fed. R. Civ. P. 12(b)(2) ............................................................................................................... 33

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 18

Fed. R. Civ. P. 12(h)(3) ............................................................................................................... 13

Ohio Civ. R. 12(B)(6) .................................................................................................................. 40

## STATUTES

18 U.S.C. § 1341 ......................................................................................................................... 18

18 U.S.C. §1073 ..................................................................................................................... 17, 18

18 U.S.C. §1204 ........................................................................................................................... 17

22 U.S.C. § 9003(a), (b), (d) ....................................................................................................... 15

22 U.S.C. §9003(a) ...................................................................................................................... 16

28 U.S.C. §1331(a) ................................................................................................................. 16, 19

O.R.C. §2307.382 ....................................................................................... 29, 30, 31, 32

PKPA, 28 U.S.C. §1738A ....................................................................................................... 4

**OTHER AUTHORITIES**

1 Harper & James, The Law of Torts (1956) 226, Section 3.7 ..................................................... 36

13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3612.9 ..............11

13B Wright & Miller, Fed. Practice & Procedure § 3612 (2d ed. 1984) ......................................11

1980 Hague Convention, 1343 U.N.T.S. 89 ............................................................................... 4

22 Am. Jur., 353, False Imprisonment, Sections 2 and 3 ............................................................ 36

45 Ohio Jurisprudence 3d (1983) 158, False Imprisonment, Section 5 ....................................... 36

Black's Law Dictionary 484 (6th ed. 1990) ................................................................................11

https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-
    Information-Pages/IsraeltheWestBankandGaza.html?wcmmode=disabled ............................ 38

ICARA, 22 U.S.C. §9001 et seq. ................................................................................................ 4

PKPA,28 U.S.C. §1738A ............................................................................................................ 4

von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121,
    1136 (1966) ........................................................................................................................ 12

x

**SUMMARY OF ARGUMENT**

Plaintiff Itzik Peled has sued his wife, Defendant Yael Peled ("Defendant Peled"), in his most recent and desperate attempt to blame her for seeking to divorce him in Israel, hold him accountable for his violence towards her, require that he financially support his children, to relitigate issues already resolved in Israel or disposed of by an Ohio domestic relations court, and to further attempt to cause her needless economic and emotional suffering through baseless and frivolous federal and state-law tort claims. While it is clear that Plaintiff harbors significant animosity toward Defendant Peled, his true gripes appear to be with the Israeli family law system—which Plaintiff opines is motivated by "radical feminist ideology"—and includes a host of governmental actors all intending to harm him personally.

Hewing to the longstanding command from the Sixth Circuit that "the label which a plaintiff applies to [a] pleading does not determine the nature of the cause of action," Defendant Peled has tried to decipher the various claims Plaintiff appears to be asserting against her and is looking beyond his labels to "the substance of the allegations." *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (quoting *United States v. Louisville & Nashville RR Co.*, 221 F.2d 698, 701 (6th Cir. 1955)); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 391 (6th Cir. 2020), quoting *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001).

To this end, and whether or not enumerated as specific causes of action, Plaintiff seems to be raising the following claims against Defendant Peled in his Complaint (ECF No. 1; at times "Compl."): (1) for the return of the parties' minor children pursuant to the 1980 Hague Convention on the Civil Aspects of International Parental Child Abduction ("1980 Hague Convention," 1343 U.N.T.S. 89) and the International Child Abduction Remedies Act ("ICARA," 22 U.S.C. §9001 et

seq.) (Compl. ¶¶3, 6, 16(a), 21, 42-60);[1] (2) for this Court to award him custody of the parties' minor children, along with an order for child support (Compl. ¶¶3, 6, 16(b)); (3) for this Court to order Defendant Peled to cease ongoing claims against him in Israel for a divorce, for temporary and permanent child support, and from attempting to collect on existing child support arrears by way of an anti-suit injunction (*Id*. ¶¶3, 16(c) and (d), 65-73); (4) for this Court to hold Defendant Peled liable under two federal criminal statutes (*Id*. ¶¶58, 60(c)); (5) for this Court to hold Defendant Peled liable under the Parental Kidnapping Prevention Act ("PKPA," 28 U.S.C. §1738A) despite that statute not providing a federal cause of action (*Id*. ¶60(c)); and, (6) for this Court to hold Defendant Peled liable under three separate state-law tort claims—i.e. loss of consortium (*Id*. ¶¶64, 74-81), intentional infliction of emotional distress (*Id*. ¶¶63, 64, 80, 81, 82-91, 98), and false imprisonment (*Id*. ¶¶16(e), 92-98).

Plaintiff's claims against Defendant Peled (whether actually pled or implied) have no basis and warrant dismissal. First, the Court does not have subject matter jurisdiction over the claims related to the 1980 Hague Convention[2]/ICARA, domestic relations matters, any federal criminal statutes, or the PKPA because the claims are either not federal questions (federal criminal claims, PKPA, and the domestic relations claims), jurisdiction has not been conferred by treaty or Congress (1980 Hague Convention/ICARA claim), or are subject to a jurisdictional exception (domestic relations claims). Second, Plaintiff's claims regarding 1980 Hague Convention/ICARA, PKPA, and anti-suit injunctive relief all fail to state claims upon which relief can be granted. Third, this Court lacks personal jurisdiction over Defendant Peled as it relates to any state-law tort claims as

---

[1] Defendant Peled is attempting to identify claims in specified paragraphs to the best of her ability and errs on the side of over-identifying as a result.

[2] 25 October 1980 Hague Convention on the Civil Aspects of International Child Abduction ("1980 Hague Convention" or "Hague Convention").

Plaintiff cannot satisfy Ohio's long arm statute or show that due process requirements are met for this Defendant residing in Israel. Lastly, and in addition to this Court's lack of personal jurisdiction, Plaintiff's state-law tort claims must fail because all claims invoking this Court's original federal question jurisdiction must fail, and there are no other compelling reasons to retain jurisdiction and hear Plaintiff's remaining state law tort claims under its supplemental jurisdiction. For these reasons, as set forth in greater detail below, the Court lacks subject matter jurisdiction over Plaintiff's claims, lacks personal jurisdiction over Defendant Peled, cannot grant Plaintiff the relief requested, and/or cannot otherwise sustain any supplemental state-law tort claims. Accordingly, all of Plaintiff's claims against Defendant Peled should be dismissed.

## BACKGROUND

The Plaintiff, Defendant Peled, and their three (3) children travelled to Israel in late December 2020. Defendant Peled and the children have continually lived in Israel since December 2020. Plaintiff[3] resided in Israel until he "managed to escape" the country in October 2022 (Compl. ¶¶40, 96) in violation of an Israeli court order. Both Plaintiff and Defendant Peled have large and supporting extended families in Israel and no significant familial connections in the United States.

For several years, Plaintiff had been exhibiting escalating abusive behavior towards Defendant Peled. While in Israel on January 7, 2021, Plaintiff incited another violent incident, causing Defendant Peled and the children to seek refuge with her family in Tel Aviv. She sought and was granted an *ex parte* protection order in the Israeli Civil Family Court. On January 13, 2021, at the full hearing on the protection order, through counsel, the Plaintiff and Defendant Peled

---

[3] Plaintiff lived a large portion of his life in Israel: he was born and raised there, served the Israeli army for ten (10) years as an officer. He obtained American citizenship in 2019 through his marriage to Defendant Peled.

negotiated temporary orders. Based upon those negotiations, Defendant Peled agreed to dismiss her petition for a protection order.

On January 25, 2021, Plaintiff and Defendant Peled entered into a "Temporary Agreement between Spouses" in which the parties agreed, in relevant part, that the children would remain in Defendant Peled's custody and that "the minors will remain in Israel, which will be the center of their lives[4]"—a term referring to jurisdiction for custody determination. Consistent with the parties' agreement, Defendant Peled filed an action for a "get"/Jewish divorce in the Israeli Rabbinical Court on January 28, 2021 and the parties jointly moved the Rabbinical Court to adopt the agreement as a temporary order.

On February 7, 2021, disregarding the negotiated temporary orders and joint request, Plaintiff refused to allow the Rabbinical Court to adopt the parties' agreement as an order. Two days later, on February 9, 2021, Plaintiff filed an application pursuant to the 1980 Hague Convention for an immediate return of the children to the United States. That application was ultimately denied after the Israeli intermediate appellate court and Israeli Supreme Court found that Plaintiff had explicitly agreed that Israel would be the new place of residence for the children. Once the Israeli Supreme Court resolved the Hague Convention claim, the Rabbinical Court proceeded with litigation by appointing a child services specialist (akin to a Guardian ad Litem) to conduct an investigation into the custody matter, and issued other orders related to child support, temporary custody, and other matters.

Plaintiff also initiated custody proceedings in Franklin County, Ohio; Defendant Peled sought to dismiss the Ohio proceedings. On May 24, 2022, the Ohio court found that Plaintiff had not perfected service upon Defendant Peled and, more importantly, found that dismissal of

---

[4] In January 2021, Plaintiff communicated to Defendant Peled and her family that he had taken steps for the family to permanently remain in Israel.

Plaintiff's complaint was merited based on Ohio being an inconvenient forum. Plaintiff pursued and lost an appeal as of right to Ohio's Tenth District Court of Appeals. The Ohio Supreme Court declined jurisdiction on May 9, 2023. Plaintiff filed the instant matter on July 12, 2023.

## STANDARDS OF REVIEW

The burden of establishing jurisdiction is on the plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). Defendant Peled seeks to dismiss Plaintiff's Complaint on multiple grounds, including a lack of subject matter jurisdiction (Hague Convention, claims seeking child custody and child support, Plaintiff's apparent claims related to alleged violations of federal criminal statutes, and the PKPA), a lack of personal jurisdiction (Plaintiff's state law tort claims), and a failure to state claims upon which relief can be granted (Hague Convention, PKPA, federal criminal statutes, anti-suit injunctive relief, and the state law tort claims).

### 12(b)(1) lack of subject-matter jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1) *Cartwright v. Garner*, 751 F.3d 753, 760 (6th Cir. 2014). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In a challenge to the factual basis, however, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the

7

trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). Therefore, while, "when a Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; . . . on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes." *Id*. (quoting *Rogers v. Stratton Indus., Inc*., 798 F.2d 913, 915 (6th Cir. 1986)). Finally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also *Bauer v. RBX Indus. Inc*., 368 F.3d 569, 581 (6th Cir. 2004). As set out below, Defendant Peled challenges Plaintiff's claims regarding the 1980 Hague Convention, claims seeking child custody and child support, his apparent claims related to alleged violations of federal criminal statutes, and the PKPA, both facially and factually.

## 12(b)(2) lack of personal jurisdiction

The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996), "over each defendant independently." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). When "a district court rules on a jurisdictional motion to dismiss made pursuant to [Rule 12(b)(2)] without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the [nonmoving party—here, plaintiff]." *CompuServe,* 89 F.3d at 1262. "To defeat such a motion, [a plaintiff] need only make a prima facie showing of jurisdiction." *Id*. In deciding a motion under Rule 12(b)(2), this Court "will construe the facts in the light most favorable to the nonmoving party." *Neogen Corp*., 282 F.3d at 887.

8

For a complaint to make a prima facie showing of jurisdiction, it requires a plaintiff to establish, with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause. *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017); *Neogen Corp*, 282 F.3d at 887; see also *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) ("[The plaintiff] need only 'demonstrate facts which support a finding of jurisdiction[.]'") (quoting *Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).

A district court can exercise personal jurisdiction over a defendant if the forum state's long-arm statute reaches the controversy and the exercise of personal jurisdiction comports with constitutional due process. *Miller v. AXA Winterthur Ins.*, 694 F.3d 675, 679 (6th Cir. 2012) To determine if it has personal jurisdiction over a defendant, a district court applies the law of the forum state, subject to the limits of the Due Process Clause. See *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1216 (6th Cir. 1989). Whether an Ohio trial court has personal jurisdiction over a nonresident requires a two-step analysis: "(1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 28.

The Due Process Clause of the Fourteenth Amendment "limits the personal jurisdiction of state courts." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 261 (2017). The United States Supreme Court has recognized two types of personal jurisdiction that state courts may exercise: general and specific. *Id*. at 262.

9

General personal jurisdiction

As the Supreme Court has explained, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[]…." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Put another way, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Id*. at 919. For natural persons, this amounts to the forum being that person's domicile.

Domicile

The law on domicile is well established. *Gilbert v. David*, 235 U.S. 561, 569 (1915) ("The requisite animus is the present intention of permanent or indefinite residence is a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely.")(citation omitted). A person's previous domicile is not lost until a new one is acquired. *Kaiser v. Loomis*, 391 F.2d 1007, 1008 (6th Cir.1968). "'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, (1989) (citing *District of Columbia v. Murphy*, 314 U.S. 441 (1941)). Establishment of a new domicile is determined by two factors: residence in the new domicile, and the intention to remain there. *Holyfield*, 490 U.S. at 48; 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3612.9.

The intent requirement for domicile has been described by the Supreme Court as "the absence of any intention to live elsewhere." *Williamson v. Osenton*, 232 U.S. 619, 624 (1914). "Residence, in contrast, requires both physical presence and an intention to remain some indefinite period of time, but not necessarily permanently." *Eastman v. University of Mich.*, 30 F.3d 670, 673

10

(6th Cir. 1994) (citing Black's Law Dictionary 484 (6th ed. 1990)); see also *Fuller v. Hofferbert*, 204 F.2d 592, 597 (6th Cir. 1953) ("'Domicile,' however, means living in a locality with intent to make it a fixed and permanent home, while 'residence' simply requires a bodily presence as in inhabitant in a given place.") Thus, a person may reside in one state and be domiciled in another. *Holyfield*, 490 U.S. at 48.

In determining domicile, a court may consider a variety of factors "including the place of voter and driver's license registration, the residence claimed for tax purposes, the location of real and personal property, and the location of professional and personal attachments." *Doe v. Ross*, No. 94-6572, 1995 U.S. Dist. LEXIS 7560, at *5-*6 (E.D. Pa. 1995) (citing *Korn v. Korn*, 398 F.2d 689, 691 (3d Cir.1968)); see also 13B Wright & Miller, Fed. Practice & Procedure § 3612 (2d ed. 1984) (listing factors: "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; payment of taxes").

<u>Specific personal jurisdiction</u>

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919, quoting von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1136 (1966), (Brackets in *Goodyear*). That is, a state tribunal has specific jurisdiction when a defendant's in-state activity is continuous and systematic and that activity gave rise to the cause of action. *Goodyear*, 564 U.S. at 923.

11

But when the defendant's activity could be categorized as only single or occasional acts or having only an impact within the forum state, the court "has inquired whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear*, 564 U.S. at 924, 131, quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). And even then, specific jurisdiction extends only to litigation in which the alleged injuries "arise out of or relate to" those activities in the forum state. *Burger King*, 471 U.S. at 472; see also *Kauffman Racing Equip.*, 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 47-49.

Here, Defendant Peled challenges this Court's personal jurisdiction over her as she abandoned her residence in the United States and took overt steps evidencing her intent for Israel to be her domicile in early 2021, has no ongoing and continuous presence in Ohio, has not availed herself of the benefits and protections of Ohio's laws since at the latest early 2021, and has taken no actions abroad which were directed at harming Plaintiff in Ohio in the manner about which he complains or otherwise.

### 12(b)(6) failure to state a claim

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), this Court must construe the allegations and facts in a complaint in the light most favorable to the Plaintiff and must grant the Plaintiff the benefit of all inferences that can be derived from the alleged facts. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276. In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated

12

by reference in the complaint, and matters about which the Court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). A court may dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

More specifically, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," and to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). That means the "factual content …allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). If a plaintiff does not "nudge[] the[] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570. In other words, a plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B*., 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10,

13

12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679.

As set forth below, this Court cannot grant Plaintiff relief for his claims under the Hague Convention, PKPA, federal criminal statutes, for anti-suit injunctive relief, and the state law tort claims.

**LAW AND ARGUMENT**

For all the following reasons, each and every claim raised by Plaintiff against Defendant Peled must be dismissed.

**I.**      **This Court lacks subject-matter jurisdiction over, and Plaintiff has failed to state a claim as it relates to, the 1980 Hague Convention on the Civil Aspects of International Parental Child Abduction and the International Child Abduction Remedies Act.**

Plaintiff seeks a return of children to the United States from Israel. (Compl. ¶60(a)). Plaintiff's First Cause of Action, construed to include claims under the 1980 Hague Convention and ICARA, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because the subject children are not located in Ohio or the United States.

The 1980 Hague Convention is a multinational treaty establishing legal rights and procedures for the prompt return of children who have been wrongfully removed from one signatory nation or wrongfully retained in another. See 1980 Hague Convention, art. 1. This Court does not have subject-matter jurisdiction over claims under the 1980 Hague Convention and ICARA in this case, and Plaintiff fails to state a claim upon which relief can be granted, because the children in question are not physically located in Ohio (or the United States) and have not been located in Ohio since December 2020.

14

ICARA implements the 1980 Hague Convention by authorizing a person who seeks a child's return to file a petition in state or federal court and directing courts to "decide the case in accordance with the Convention." 22 U.S.C. § 9003(a), (b), (d); see also *Junior v. de Sousa*, No. 1:21-cv-02232, 2023 U.S. Dist. LEXIS 111875, *5-6 (N.D. Ohio June 27, 2023). Suits must be filed in a court in the jurisdiction *where the child is physically located at the time the petition is filed*. 22 U.S.C. § 9003(b). Courts—including the Sixth Circuit—have specifically stated that "a court *in the abducted-to nation* has jurisdiction to decide the merits of an abduction claim…." *Friedrich v. Friedrich*, 78 F.3d 1060, 1063-1064 (6th Cir. 1996) (emphasis added); see also *Yang v. Tsui*, 416 F.3d 199, 201 (3d Cir. 2005) ("The District Court had jurisdiction pursuant to ICARA…. At the time [petitioner's] Petition was filed in the District Court, the child was located in Pittsburgh, Pennsylvania."); *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (jurisdiction over petition in Georgia was proper where children were located in Georgia, because ICARA jurisdiction is based on children's location, not traditional residency); *Duhart v. Kristan*, No. 1:23-cv-3947-SDG, 2023 U.S. Dist. LEXIS 205107, *2-3 (N.D. Ga. Nov. 16, 2023) (citing same).

When applying a treaty, this Court must determine whether it has jurisdiction over the case by examining "two levels of judicial power": treaty jurisdiction and domestic jurisdiction. *Smith v. Canadian Pac. Airways, Ltd*., 452 F.2d 798, 800 (2d Cir. 1971); see also *Campbell v. Air Jam., Ltd*., 863 F.2d 1, 1 (2d Cir. 1988). Treaty jurisdiction is defined by the treaty's provisions themselves, which may "delimit which nation-states' courts can hear a claim arising under the treaty." *Nat'l Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain Sols., Inc*., 74 F.4th 66, 74 (2d Cir. 2023) (explaining that certain provisions of the Montreal Convention define its treaty jurisdiction by specifying where actions "must be brought") (internal quotation marks omitted), cert. denied sub nom. *UPS Supply Chain Sols., Inc. v. EVA Airways Corp*., 144 S. Ct. 559 (2024).

15

Domestic jurisdiction is governed by the usual rules—such as Article III and jurisdictional statutes—that specify whether a "particular United States court" has "power" to hear a case. *Smith*, 452 F.2d at 800 (pointing to the federal-question statute, 28 U.S.C. §1331(a), as an example of a domestic jurisdictional limit). If either type of jurisdiction is lacking, then the district court must dismiss the suit for lack of jurisdiction. *Tereshchenko v. Karimi*, 102 F.4th 111, 125 (2d Cir. 2024).

The 1980 Hague Convention is devoid of any jurisdictional grant to a particular United States court. See 1980 Hague Convention. ICARA, as the enabling statute, provides the only "domestic jurisdiction" for the 1980 Hague Convention. See *Tereshchenko*, 102 F.4th at FN 7 ("As we explained in *Smith*, treaty jurisdiction and domestic jurisdiction are often linked. Jurisdictional statutes such as 28 U.S.C. §1331 (federal question jurisdiction) and 22 U.S.C. §9003(a) (ICARA jurisdiction) authorize district courts to hear cases that "aris[e] under" a treaty, and a case will arise under that treaty only when the case meets the treaty's jurisdictional requirements.")(internal citation omitted). In the case at hand, there is no treaty jurisdictional grant in the 1980 Hague Convention itself. Further, this Court does not have domestic jurisdiction under ICARA, as the implementing statute for the 1980 Hague Convention, to hear Plaintiff's claims as the children are not located in Ohio (or the United States generally) and have not been located here since December 2020. Plaintiff can only file a petition for relief under the 1980 Hague Convention in Israel, the alleged "abducted-to nation" where the children are physically located, which he did in 2021 and lost[5].

Lastly, Plaintiff's alleged claims under the 1980 Hague Convention fall outside of the 1-year period set forth in Article 12 of the Convention and, therefore, are not timely raised by his

---

[5]Plaintiff concedes that he has already sought the return of his children via the 1980 Hague Convention by pursuing that claim in Israel but lost (including exhausting all appeals). Compl. ¶¶ 28, 32, 33, 39, and 50.

16

Complaint filed on July 12, 2023. Plaintiff misstates the law (Compl. ¶¶3, 59) by asserting that the statute of limitations was or should be equitably tolled by his "no exit prohibition in Israel from 1/14/2021 to 10/20/2022." (*Id*. ¶3). The United States Supreme Court has clearly held that equitable tolling does not apply to the 1-year period in Article 12 of the 1980 Hague Convention. *Lozano v. Alvarez*, 572 U.S. 1, 18 (2014).  As a result, Plaintiff's claims brought in July of 2023 (if they constitute viable claims at all) fall significantly outside of the 1-year period and must be dismissed as untimely.

Accordingly, Plaintiff asserts claims over which this Court does not have subject matter jurisdiction and/or are claims for which relief cannot be granted and all such claims must be dismissed.

**II.    This Court lacks subject-matter jurisdiction over, and Plaintiff has failed to state a claim as it relates to, any alleged violation of federal criminal statutes because no private cause of action exists.**

In at least three places (Compl. ¶¶58 and 60(b) and (c)), Plaintiff appears to suggest and request that Defendant Peled is subject to liability under the International Parental Kidnapping Act, 18 U.S.C. §1204 ("IPKA") and perhaps[6] 18 U.S.C. §1073 (related to flight to avoid prosecution or giving testimony), or at minimum implies that civil relief is available to him under such statute(s). This Court lacks subject-matter jurisdiction over any such claims because they do not qualify as federal questions and Plaintiff, again, cannot state a claim upon which relief may be granted. To the degree that his Complaint is construed as asserting such claims, it must be dismissed.

---

[6] Due to the at times incoherent nature of Plaintiff's Complaint, Defendant Peled cannot reasonably ascertain whether Plaintiff's citations to statutes is simply erroneous or intentional. See, e.g., Compl. ¶28 (erroneously referring to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents). In the interest of caution, Defendant Peled is treating Plaintiff's reference to both United States Code Title 18 sections as intentional.

In no uncertain terms, Plaintiff alleges that Defendant Peled has violated the IPKA (Compl. ¶58), has violated 18 U.S.C. §1073 (*Id*. ¶60(c)), and requests as a result that she be placed on "databases of abductors" (*Id*. ¶60(b)) and that an arrest warrant be issued for her and disseminated internationally (*Id*. ¶60(c)). Sixth Circuit law is well established that no private cause of action exists for violations of a federal criminal statute. *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (holding that a violation of federal fraud statutes such as 18 U.S.C. § 1341 "do not give rise to private causes of action"); *Am. Postal Workers Union, AFL-CIO, Detroit Local v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("[C]riminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions"); *see also Whorton v. Cognitians, LLC,* 2019 U.S. Dist. LEXIS 88048, *7-8 (S.D., Ohio 2019)(citing same); ); *Rockefeller v. U.S. Court of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (holding that federal criminal statutes do not convey a private right of action)(collecting cases).This rule is plenary and goes so far as to abrogate such a claim even qualifying as a federal question. *Flores v. Lathrop*, 2024 U.S. Dist. LEXIS 77178, *3-4 (D.D.C. 2024). Accordingly, to the extent Plaintiff seeks to invoke the IPKA or 18 USC §1073 in his own right and in this civil proceeding, this Court lacks subject-matter jurisdiction. Plaintiff cannot state a claim upon which relief can be granted because he has no private cause of action, and his claims must be dismissed.

**III.    Because this Court lacks subject-matter jurisdiction over, and Plaintiff has failed to state a claim as it relates to, the 1980 Hague Convention and any federal criminal statute in this matter, Supplemental Jurisdiction fails because the Federal Questions Claims must be dismissed.**

Plaintiff's Complaint is expressly predicated on federal-question jurisdiction (Compl. ¶17), and particularly—and at minimum—his claims arising under ICARA[7] (at least as it relates to Defendant Peled). Since this Court lacks subject-matter jurisdiction over any federal question claim(s), all supplemental jurisdiction claims must be dismissed.

Section 1331 vests district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. The well-pleaded complaint rule governs the existence *vel non* of federal question jurisdiction. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003). Pursuant to this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 3 (1987).

A federal question is present "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Vaden v. Discovery Bank*, 556 U.S. 49, 60 (2009) (alteration in original) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *see also Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) ("[A] suit arises under federal law if there appears on the face of the complaint some substantial, disputed question of federal law."). Federal question jurisdiction is not invoked when a purported federal claim is "so insubstantial, implausible, foreclosed by prior decision … or otherwise

---

[7] While Plaintiff does not articulate the federal criminal statutes in his Complaint (¶17) as independent federal-question bases for jurisdiction, Defendant Peled includes them here given their nature, nonetheless. Further, Defendant Peled is perplexed by Plaintiff's reference to a portion of the Fair Labor Standards Act regarding minimum wage (29 U.S.C. §206) in his Complaint (¶17) as it seems entirely disconnected from any of the other claims he appears to be bringing against any of the named defendants and is not cited again in the Complaint. Because Plaintiff does not appear to be raising a claim against Defendant Peled in relation to this statute, she will not address it.

completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)); see also *Yancy v. Std. Mortg. Corp.*, No. 16-16276, 2017 U.S. Dist. LEXIS 69488, *4-5 (E.D. La. May 5, 2017).

When all federal claims are dismissed or otherwise eliminated before trial*, the court should generally decline to exercise supplemental jurisdiction over any remaining state law claims.* See *Bass v. Parkwood Hosp*., 180 F.3d 234, 247 (5th Cir. 1999); *Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992). In fact, the Sixth Circuit has a "strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed", as recently reenforced in *Lyndon's LLC v. City of Detroit,* No. 23-1985, 2024 U.S. App. LEXIS 17690 (6th Cir. 2024):

> Both federal statutory provisions and our precedent not only permit but encourage district courts to decline to exercise supplemental jurisdiction over state law claims that are left without an anchor when their associated federal claims are dismissed. 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction[.]"); *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) ("[T]his Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."); cf. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002) ("[W]hen a district court dismisses claims over which it had original jurisdiction, it generally should remand state law claims to state court.")

*Id.* *9-10.

Other Sixth Circuit cases have emphasized that when no federal claims remain, Ohio state law claims should not be tried by a federal tribunal that no longer has original jurisdiction over any of the remaining claims. See 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim if  the district court has dismissed all claims over which it

20

has original jurisdiction"); *Castelvetere v. Messer*, 611 F. App'x 250, 256 (6th Cir. 2015) ("[W]hen all federal claims are dismissed the balance of considerations usually will point to dismissing the state law claims"); see also *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir. 1985) ("[Federal appeals courts] have indicated a strong preference for the dismissal of pendent or ancillary claims whenever the district court disposes of the federal claim or claims prior to trial."). See also *Est. of Q.W. v. Mikonowicz*, No. 3:22-CV-00671-JGC, 2024 U.S. Dist. LEXIS 21910, *2-3 (N.D. Ohio February 8, 2024) (citing same).

It is the exception for federal courts to retain jurisdiction after all federal claims have been dismissed. In deciding whether to continue exercising jurisdiction, courts should consider "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity." *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999). The statutory factors include: (1) whether the claim raises a novel or complex issue of State law; (2) whether the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) whether the district court has dismissed all claims over which it has original jurisdiction; or, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367 (c); see also *Yancy,* 2017 U.S. Dist. LEXIS 69488 at *6-7.

Here, none of the statutory exceptions apply. None of the various state law claims asserted (ex. loss of consortium, intentional infliction of emotional distress, false imprisonment) are novel or complex. None of the Ohio state law claims asserted predominate over the federal claims which formed the basis of this Court's original jurisdiction but instead exist here solely because Plaintiff alleged federal claims in an attempt to claim proper jurisdiction. Once this Court dismisses all

21

claims over which it arguably had original jurisdiction, there are no other "compelling reasons" to retain jurisdiction and hear Plaintiff's remaining Ohio state law claims.

When this Court dismisses Plaintiff's claims under the 1980 Hague Convention, ICARA, 18 U.S.C. §1204 and 18 U.S.C. §1073 (and the PKPA), all of Plaintiff's federal claims under 28 U.S.C. §1331 would be dismissed. No federal claims would remain, only a series of Ohio state court claims. This Court should apply the Sixth Circuit's strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed[8] and dismiss all of Plaintiff's remaining claims. Dismissal of the other ancillary claims is consistent with this Court's practice and federal court preference.

**IV.     This Court lacks subject-matter jurisdiction to entertain Plaintiff's request to be awarded custody of his children or an award of child support.**

Sprinkled throughout his Complaint, and while not pled as a specific cause of action, Plaintiff asks this Court to grant him custody of his children and to award him child support from Defendant Peled. See Compl. ¶¶3, 6, 16(b). In effect, Plaintiff asks this Court to stand in the position of a state-level domestic relations court and adjudicate issues in the heartland of domestic relations law and issue a declaration of rights and obligations arising from marital status.

Federal courts are precluded from exercising jurisdiction over cases whose substance is generally domestic relations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Chambers v. Michigan*, 473 F. App'x 477, 478 (6th Cir. 2012). "The premise behind the domestic relations exception is that the federal courts should not interfere in domestic relations disputes, including disputes over marital property *or the custody of children*, because the state courts have developed the proficiency and specialized resources to handle such cases." *Elias v. Elias*, 2013 U.S. Dist. LEXIS 98984, at *24-25 (D. Mass 2013) citing *Ankenbrandt*, 504 U.S. at 703 (emphasis added).

---

[8] *Packard,* 423 F. App'x 584; *Lyndon's, LLC,* 2024 U.S. App. LEXIS 17690, *9-10

Federal courts have no jurisdiction where, although asserting claims sounding in tort or claims under a treaty, the claim is "a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) citing *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988). The proper inquiry in deciding whether the domestic relations exception applies concerns the type of substantive determination that a federal court must make in order to resolve the claim. *See Chevalier v. Barnhart*, 992 F. Supp.2d 810, 814 (S.D. Ohio, E.D. 2014) rev'd on other grounds in *Chevalier v. Estate of Barnhart*, 803 F.3d 789 (6th Cir. 2015), citing *Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989) and *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir. 1981) ("It is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated."). If the federal court is called upon to decide issues regularly decided in state court domestic relations actions, then the exception is applicable. *See Chevalier*, 992 F. Supp.2d at 814.

In *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), the first case the circuit considered implicating the exception post-*Ankenbrandt*, the Sixth Circuit was called upon to determine whether the action was a "core" domestic relations case, or a constitutional claim in which it is incidental that the underlying dispute involves a divorce. 142 F.3d at 291. Importantly, in determining that the plaintiff's claim was not barred by the domestic relations exception in that case, the Sixth Circuit commented on *what remedial functions would implicate* the exception and would constitute "status-related functions" that fall within state power and competence—i.e. requests that a "court…involve itself in the sort of questions *attendant to domestic relations* that are assumed to be within the special expertise of the state courts – for instance, the merits of a divorce action; *what custody determination would be in the best interest of a child*; what would constitute an equitable division of  property; *and the like*." *Id*. at 291-292 (emphasis added). In

23

other words, determination of issues directly related (i.e. "attendant") to the issuance of a divorce, alimony/child support, or a child custody decree fall within the exception. *Stark v. City of Memphis*, 2020 U.S. Dist. LEXIS 250141, \*13 (W.D. Tenn. 2020) (discussing how exception applies to claims for "a divorce, award alimony or another form of support, or determine child custody").

Further, in *McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999), in deciding whether a breach of contract claim was actually a repackaged domestic relations claim at heart, the Sixth Circuit found that the exception applied because the remedy the court was asked to provide was not one sounding in contract or tort "that merely has domestic relations overtones, but is one seeking a declaration of rights and obligations arising from marital status." 193 F.3d at 414. The *McLaughlin* court again reiterated that the remedy sought actually called upon the court to perform "status-related functions that fall within state power and competence," which in that case was enforcing a separation agreement which had been adopted by a domestic relations court. *Id.* at 413 quoting *Ankenbrandt*, 504 U.S. at 704. In arriving at this conclusion, the Sixth Circuit effectively held that claims in which "one seeking a declaration of rights and obligations *arising from marital status*"[9] amounts to requests that a "court…involve itself in the sort of questions attendant to domestic relations that are assumed to be within the special expertise of the state courts". *Catz*, 142 F.3d at 291-292.

Here, Plaintiff expressly asks this Court award him custody of his children and to order Defendant Peled to pay him child support—issues undeniably "attendant to" resolving divorce cases and the rights and obligations arising from marital status. Because this Court is without subject-matter jurisdiction to grant the relief Plaintiff requests, his claims for an award of custody

---

[9] *McLaughlin*, 193 F.3d at 414.

24

and child support must be dismissed.

**V.      Because this Court lacks subject-matter jurisdiction over his custody and child support claims, Plaintiff cannot state a claim upon which relief can be granted for anti-suit injunctive relief.**

Plaintiff believes he is entitled to an anti-suit injunction specifically preventing Defendant Peled from continuing with Israeli litigation related to obtaining a divorce and child support from him which has been ongoing since early 2021. Compl. ¶¶ 26, 39, 41, 65-73. Because this Court has no subject-matter jurisdiction over corresponding claims for divorce or child support, Plaintiff cannot state a claim upon which relief can be granted and his claim must be dismissed.

Resolution of claims for an anti-suit injunction are reviewed for abuse of discretion. *Gau Shan Co. Ltd. v. Bankers Tr. Co.*, 956 F.2d 1349, 1352 (6th Cir. 1992). "A district court abuses its discretion when it relies on clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Id.* (quoting *N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166-67 (6th Cir. 1989)). That standard is deferential: "the district judge's weighing and balancing of the equities should be disturbed on appeal only in the rarest of cases." *Id.* (quoting *N.A.A.C.P.*, 866 F.2d at 166).

Plaintiff alleges that he is entitled to an order preventing Defendant Peled from continuing to seek a divorce from him in the Israeli Rabbinical Court (Compl. ¶66), from seeking child support from him in the Israeli proceedings (*Id.* ¶65), and from pursuing the collection of Israeli child support arrears through the Israeli governmental agency responsible for such claims (*Id.* ¶67). Plaintiff predicates his claim for an anti-suit injunction on his belief that the Israeli proceedings in this regard are all "based on laws and case laws (sic) that statutorily discriminate against men, do not give a man a chance for a fair trial, violate the principles of equal protection, and are designed

to strip the man of everything he owns and rob him of his children." *Id*. ¶68. None of the things about which Plaintiff complains have any bearing on his claim for relief.

In *Beijing Fito Med. Co. v. Wright Med. Tech., Inc.*, 763 Fed. Appx. 388 (6th Cir. 2019), the Sixth Circuit described and conditioned the availability of an anti-suit injunction thus:

> The anti-suit injunction is an equitable remedy that allows one court to "control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions." *Gau Shan*, 956 F.2d at 1352 (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C. Cir. 1984)). Courts "rarely issue[]" the injunction because that relief contravenes the general principle of allowing parallel proceedings on the same in personam claim, "at least until a judgment is reached in one [jurisdiction] which can be pled as res judicata in the other." *Id*. (alteration in original) (quoting *Laker Airways*, 731 F.2d at 926-27). But there are *limited circumstances* when the need for the injunction outweighs concerns about international comity. In this circuit, which adopts the same standard as the Second and D.C. Circuits, courts may grant an anti-suit injunction to prevent threats to the forum court's jurisdiction or to stop one party from evading an important public policy of the forum court. *Gau Shan*, 956 F.2d at 1355; see also *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 37 (2d Cir. 1987); *Laker Airways*, 731 F.2d at 931 n.73.

*Id*. at 399 (emphasis added). Further, the Sixth Circuit stated that "[p]arallel proceedings rarely threaten a forum court's jurisdiction" (*Id*.) and "that only two scenarios might threaten the district court's jurisdiction: (1) when the district court's jurisdictional basis is in rem or quasi in rem; or (2) when the foreign court attempts to carve out exclusive jurisdiction to divest the district court of all jurisdiction." *Id*. (citation omitted). Against this backdrop, Plaintiff cannot state a claim upon which relief can be granted on either basis and for the same underlying reason.

Here, Plaintiff seemingly predicates his request for an anti-suit injunction on his mistaken belief that this Court has proper jurisdiction to adjudicate issues related to child custody or child support, including Defendant Peled's attempts to collect on accrued arrears in Israel. As noted above, because this Court lacks subject-matter jurisdiction over all such issues due to the domestic

26

relations exception it is impossible for any Israeli proceedings to conflict with this Court's in rem or quasi in rem jurisdiction since it has none over those subjects. Similarly, the Israeli court cannot "carve out exclusive jurisdiction to divest [this Court] of all jurisdiction" over the issues of divorce and child support because, again, this Court has no such jurisdiction to begin with. Thus, because there are no set of facts upon which this Court could grant Plaintiff his requested relief, his claims must be dismissed.

**VI.     Because the PKPA does not include a federal cause of action, this Court lacks subject-matter jurisdiction and Plaintiff cannot state a claim upon which relief can be granted.**

Plaintiff's reference to and allegation that Defendant Peled "violated" the PKPA evinces a profound misunderstanding of both the purpose of that statute and that it doesn't provide him with a federal cause of action.

Congress enacted the PKPA to remedy a then-pervasive problem wherein a custody determination entered by one US state was subject to contravention or modification by another US state by operation of the Full Faith and Credit Clause. *Thompson v. Thompson*, 484 U.S. 174, 175-177, 180-181 (1988). The PKPA prescribed a hierarchical approach for determining which state court custody order was entitled to priority and, thereby, sought to avoid jurisdictional competition and conflict between state courts. *Id*. at 175-177. Notably, the PKPA's scope is not what Plaintiff appears to think it is: namely, some additional method by which to attempt to malign Defendant Peled based solely on its title. In fact, no individual party can "violate" the PKPA since it acts as a jurisdictional check on state courts, not litigants themselves. *Id*. at 182-183.

More importantly, the United States Supreme Court made clear that no federal cause of action exists under the PKPA. *Id*. at 183, 187. Thus, to the extent Plaintiff's Complaint can be read to include a claim that Defendant Peled "violated" the PKPA, this Court lacks subject-matter

jurisdiction due to a lack of a federal question, Plaintiff fails to state a claim upon which relief can be granted, and any such claim must be dismissed.

**VII.    This Court lacks personal jurisdiction over Defendant Peled as it relates to Plaintiff's state-law tort claims and Plaintiff fails to state claims upon which relief can be granted.**

Plaintiff raises multiple state-law torts in his Fourth Cause of Action (Loss of Filial Consortium; Compl. ¶¶64[10], 74-81), Fifth Cause of Action (Intentional Infliction of Emotional Distress; *Id*. ¶¶ 63, 64, 80, 81, 82-91, 98), and Sixth Cause of Action ("Illegal Confinement" or False Imprisonment; *Id*. ¶¶ 16(e), 92-98). Defendant Peled will address these Ohio torts together in the interest of economy, as all three fail based on a lack of personal jurisdiction over Defendant Peled and a failure to state a claim upon which relief can be granted.

A.  <u>This Court does not have personal jurisdiction over Defendant Peled for the three (3) Ohio torts alleged.</u>

As set forth above, all three Ohio torts should be dismissed based on Fed. R. Civ. P. 12(b)(2) (see Standards of Review, above) for lack of personal jurisdiction over Defendant Peled. Under Ohio law, courts may exercise personal jurisdiction over a nonresident defendant only when: (1) the state's long-arm statute confers personal jurisdiction; and (2) granting jurisdiction would not deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Kauffman Racing Equip.,*126 Ohio St.3d 81, at ¶ 28. To establish jurisdiction under Ohio's long arm statute, O.R.C. §2307.382, a plaintiff must show that "an act or omission outside the state caused tortious injury in Ohio, and … the defendant regularly conducted an activity in Ohio." *Estate of Poole v. Grosser*, 134 Ohio App.3d 386, 391-92, 731 N.E.2d 226 (1st Dist. 1999). Ohio courts have found a defendant's activity within the state to be "regular" when

---

[10] See FN1.

the defendant "derive[d] substantial revenue from services rendered in Ohio[,]" or "regularly did or solicited business or engaged in any other *persistent* course of conduct in Ohio." *Id.* at 392 (*citing Jackson v. State St. Bank & Trust Co.* 110 Ohio App.3d 388, 395, (2d Dist. 1996)) (emphasis added).

For the second prong, the Due Process Clause allows states to exercise personal jurisdiction over a defendant only where that defendant has established "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 394 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)); see also *Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *Kraus v. Galloway Ridge, Inc.*, 9th Dist. Summit No. CV-2015-10-5098, 2015 Ohio Misc. LEXIS 33855, *2-3. In assessing minimum contacts, the focus is on "the relationship among the defendant, the forum, and the litigation…." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Jurisdiction lies where "the defendant has 'purposely directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)." *Burger King*, 471 U.S. at 472-473 (citations original); see also *Fallang v. Hickey*, 40 Ohio St. 3d 106, 107-108 (1988) (citing same).

1. Ohio's long-arm statute

Here, Plaintiff cannot satisfy the overwhelming majority of bases in Ohio's long-arm statute, O.R.C. §2307.382(A), as they focus on tortious activity occurring *within the state* or a defendant's direct connection with Ohio. By Plaintiff's own assertion, Defendant Peled and the parties' children have been physically present in Israel since December of 2020 and her address and employer are located in Israel (Compl. ¶1, 8). All of the actions alleged in Plaintiff's Fourth,

29

Fifth, and Sixth Causes of Action occurred in Israel, including all of the Israeli legal proceedings referenced that serve as the foundation of Plaintiff's tort claims.

The only bases that could possibly apply are found in O.R.C. §2307.382(A)(6) and (8):

> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;
> …
> or (8) having an interest in, using, or possessing real property in this state.

However, neither are applicable here.

Plaintiff cannot satisfy O.R.C. §2307.382(A)(6) because the bases of his claims are legal action in Israel taken *by Israeli courts*; Defendant Peled's only "act" was a legal one—pursuing a divorce and related relief through the Israeli court system and participating in 1980 Hague Convention action initiated by Plaintiff. Her "act"—committed outside of Ohio—was not done with the "purpose of injuring persons" in this state but with the purpose of ending her marriage along with all attendant issues and participating in a legal proceeding Plaintiff filed in Israel. Plaintiff acknowledges that all of the "acts" at issue were done "in a legal proceeding" (Compl., ¶¶2, 9, 25, 41, 77, 95), though he alleges it was a "sham." *Id.* ¶95. Moreover, *by Plaintiff's own admission*, he was physically in Israel until October 20, 2022 (*Id*. ¶40) after all of the court orders Plaintiff complains about had been issued (*Id*. ¶¶ 22, 25, 27, 29, 32, 33, 38, 39). Personal jurisdiction in Ohio under (A)(6) cannot be satisfied by initiating or participating in valid legal proceedings in a foreign country consistent with foreign law, and especially when the specific acts about which a plaintiff takes issue were the result of someone other than the claimed defendant—

here judicial officers of the foreign court. Plaintiff further fails to satisfy O.R.C. §2307.382(A)(8) because none of the Ohio torts he raises are related to or have any nexus to real property in Ohio[11].

### 2. Due Process Clause

Even if Plaintiff could satisfy a basis under O.R.C. §2307.382 (which Defendant Peled does not concede), Plaintiff cannot satisfy the Due Process Clause requirements as both general and specific personal jurisdiction are lacking.

As noted above, general jurisdiction exists for individuals in their domicile. *Goodyear*, 564 U.S. at 924. While Plaintiff and Defendant Peled lived in Ohio prior to December 2020, Plaintiff admits that at the time she commenced divorce proceedings in Israel, she had abandoned Ohio as her home and intended to remain indefinitely in Israel. See Compl. ¶¶26 (filing for divorce in Israel necessarily implies an intent to remain); 66 (same); 27 (requesting a social worker and psychological testing necessarily implies an intent to remain in Israel with the children); 28 (Plaintiff filing 1980 Hague Convention action and Defendant Peled defending against same necessarily implies that she intended to remain in Israel with the children permanently); 50 (Defendant Peled's uncertainty about the outcome of Hague litigation does not detract from her intention to make Israel her home, especially when coupled with obtaining employment). These are hallmarks of a change of domicile. *Holyfield*, 490 U.S. at 48. Since Defendant Peled's domicile was Israel at all times relevant to Plaintiff's claims, general jurisdiction doesn't exist.

Moreover, specific jurisdiction only exists when: (1) a defendant's in-state activity is continuous and systematic and that activity gave rise to the cause of action; or, (2) there are only single or occasional acts or having only an impact within the forum state there was some act by

---

[11] The property Plaintiff refers to in his Complaint (¶18) is the residential property located at 1316 College Avenue, Columbus, Ohio, 43209 (PPN 010-088079-00). Of note, Defendant Peled is not and has never been the title owner of that property and it has always been titled solely in Plaintiff's name since he purchased it on December 16, 2016.

which the defendant purposefully availed themselves of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Goodyear*, 564 U.S. at 923-924. Even then, specific jurisdiction extends only to litigation in which the alleged injuries "arise out of or relate to" those activities in the forum state. *Burger King*, 471 U.S. at 472. As Defendant Peled has not "purposely directed" activities at Plaintiff in Ohio (*Keeton,* 465 U.S. at 774), and the alleged injuries do not "arise out of or relate to" those activities, *Helicopteros*, 466 U.S. at 414, specific jurisdiction cannot exist absent sufficient contacts between the foreign defendant and the state. During all of the alleged activities about which Plaintiff complains, both parties were physically present in Israel and participating in Israeli court proceedings, so Defendant Peled could not "direct" harm to Plaintiff in Ohio in the manner he describes (i.e. alienating his children, falsely imprisoning him, and intentionally inflicting emotional distress).

Plaintiff's claims stem from the 'activities' of either Israeli courts or the State of Israel (i.e. his allegation that he was falsely imprisoned there)—not of Defendant Peled herself. Defendant Peled has not been physically present in Ohio since December 2020 (and has not returned) and none of the alleged torts were committed in or directed toward this state. Plaintiff fails to satisfy O.R.C. §2307.382(A)(6) on the face of his Complaint; he does not allege that Defendant Peled took any direct action toward him, only that she participated in legal proceedings, and cannot demonstrate that she directed any activity allegedly causing him harm into Ohio, let alone engaging in activity that is related to any purported activity directed into this state. As a result, this Court does not have personal jurisdiction over Defendant Peled for the Plaintiff's Fourth, Fifth and Sixth Causes of Action and they must be dismissed.

32

B.  Plaintiff's Ohio tort claims fail to state claims upon which relief can be granted

1.    Loss of Filial Consortium.

The Supreme Court of Ohio has held that "a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes *physical injury* to the parent's minor child, for loss of filial consortium." *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 251 (1993) (emphasis added). "Generally, a derivative claim is dependent on the existence of the primary claim." *McCarthy v. Lee*, 10th Dist. Franklin No. 21AP-426, 2022-Ohio-1413, ¶6. "[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the [party] who suffers bodily injury." *Bowen v. Kil-Kare, Inc*, 63 Ohio St.3d 84, 93 (1992). "When a principal claim fails for substantive reasons, the derivative loss-of-consortium claim fails as well." *McCarthy v. Lee*, 173 Ohio St.3d 366, 2023-Ohio-4696, ¶17. If a defendant is found not to be liable for a child's injuries, the parents may not recover damages, including a loss of filial consortium claim. *Fehrenbach v. O'Malley*, 113 Ohio St.3d 18, 2007-Ohio-971, ¶21. In cases where the principal claim(s) failed for substantive reasons, the derivative claim must also fail. *Debold v. Siesel Distrib., LLC*, 3rd Dist. Seneca No. 22-CV-0198, 2024-Ohio-1851, ¶16.

In the instant matter, Plaintiff does not assert any physical injury to the minor children in his Fourth Cause of Action (Compl. ¶¶74-81), let alone any physical injury either intentionally or negligently caused by Defendant Peled. Since the substance of the principal claim fails (because there is no physical injury), the derivative claim of loss of filial consortium must also fail. Thus, as no principal claim alleging tortious bodily injury of the children was plead, or exists, Plaintiff does not assert a claim upon which relief can be granted.

33

2.    Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress is defined as "one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Seminatore v. Redmond*, 8th Dist. Cuyahoga No. 54806, 1988 Ohio App. LEXIS 5002, 11 (Dec. 15, 1988), quoting *Yeager v. Local Union 20*, 6 Ohio St.3d 369 (1983), syllabus.[12] To establish an intentional infliction of emotional distress claim, Plaintiff must demonstrate that: (1) Defendant Peled intended to cause Plaintiff serious emotional distress; (2) Defendant Peled's conduct was extreme and outrageous; and, (3) Defendant Peled's conduct was the proximate cause of Plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (1994). Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized community." *Yeager*, 6 Ohio St.3d at 375. "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to sustain a claim for relief." *Id.;* see also *Crenshaw v. Mooningham*, 8th Dist. Cuyahoga No. 112835, 2024-Ohio-1470, ¶17; *Meminger v. Ohio State Univ.*, 10th Dist. Franklin No. 17AP-489, 2017-Ohio-9290, ¶14. In order to recover for a claim of intentional infliction of emotional distress under Ohio law, "it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, ¶47 (8th Dist.); *Meminger*, 2017-Ohio-9290 at ¶15.

---

[12] "Under Ohio law, reckless infliction of emotional distress and intentional infliction of emotional distress are the same cause of action." *Hunt v. Toledo Law Dept.*, 881 F.Supp.2d 854, 886 (N.D.Ohio 2012), citing *Ward v. Cty. of Cuyahoga*, 721 F.Supp.2d 677, 695 (N.D.Ohio 2010), fn. 8; N.D.Ohio No. 1:03 CV 2075, 2006 U.S. Dist. LEXIS 11913 (Mar. 21, 2006), citing *Russ v. TRW, Inc.*, 59 Ohio St.3d 42 (1991); see also *Garmback v. City of Cleveland*, 8th Dist. Cuyahoga No. 110295, 2022-Ohio-1490, ¶43.

34

Importantly, whether conduct is "extreme and outrageous" is initially a question of law for the court. *Bell v. Ohio State Bd. of Trustees*, 10th Dist. No. 06AP-1174, 2007-Ohio-2790, ¶24, citing *Crawford v. ITT Consumer Financial Corp.*, 653 F.Supp. 1184, 1192 (S.D.Ohio 1986). A trial court may dismiss a claim for intentional infliction of emotional distress, pursuant to Ohio Civ. R. 12(B)(6), where the alleged conduct does not, as a matter of law, reach the level of "extreme and outrageous" conduct. See *Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 152-153; *Wilson v. Chatman*, 3d Dist. No. 3-02-38, 2003-Ohio-2818, ¶13; *McCulley v. Centria Pshp.,* 1999 Ohio App. LEXIS 4269 at *4-*5 (5th Dist. 1999).

In the case at hand, Plaintiff fails to assert that Defendant Peled engaged in any "outrageous conduct." Instead, Plaintiff claims that he has suffered harm as the result of Israeli court proceedings, Israeli judges, and/or the State of Israel. Defendant Peled only initiated divorce proceedings in Israel and participated in a Hague Convention proceeding initiated by Plaintiff. In fact, Plaintiff specifically admits *that Israeli judges* issued the orders about which he complains and attempts to blame his wife. Compl. ¶¶2, 9, 25, 41, 77, and 78. Plaintiff cannot satisfy the requirements set forth above by being merely a disgruntled litigant—much less from litigation that took place in Israel, not Ohio. Moreover, Plaintiff fails to assert specific "conduct" *that Defendant Peled engaged in* that would meets the required standard—behavior so atrocious that it is "utterly intolerable in a civilized community"—other than her participation in legal proceedings and a desire to end her marriage to Plaintiff. Accordingly, Plaintiff does not state a claim upon which relief can be granted by this Court and his claim must be dismissed.

### 3. False Imprisonment

"False imprisonment has been said to be the unlawful restraint by one person of the physical liberty of another." *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960) (citing 22 Am. Jur.,

35

353, False Imprisonment, Sections 2 and 3). "In this phrase, the word 'false' seems to be exactly synonymous with 'unlawful.' False imprisonment has been defined by statute as 'the unlawful violation of the personal liberty of another.'" *Id*. "As is seen from the definitions, false arrest and false imprisonment as causes of action are indistinguishable. The only distinction lies in the manner in which they arise". *Id.* "In a false arrest, false imprisonment exists, but the detention is by reason of an asserted legal authority to enforce the processes of the law; in a false imprisonment, the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law". *Id.;* see also *Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St. 3d 107, 110 (1991) (false imprisonment is a rule of law that is generally applicable to private parties).

The elements for false imprisonment are set forth in 45 Ohio Jurisprudence 3d (1983) 158, False Imprisonment, Section 5, and *Mullins* v. *Rinks, Inc.* (1971), 27 Ohio App. 2d 45. The requisites are: (1) a detention of the person; and, (2) an unlawful detention. *Mikes v. Kent State University*, 10th Dist. Franklin No. 89AP-749, 1990 Ohio App. LEXIS 971, *4. False imprisonment occurs when a person confines another intentionally "'without lawful privilege and against his consent within a limited area for any appreciable time, however short.'" *Feliciano v. Kreiger* (1977), 50 Ohio St. 2d 69, 71 quoting 1 Harper & James, The Law of Torts (1956) 226, Section 3.7. The Ohio Supreme Court recognized the continuing nature of the "confinement" element in *State, ex rel. Kemper, v. Beecher* (1847), 16 Ohio 358, 363, when it stated that "each day's continuance of the body of a person in custody, is a distinct trespass, and may be treated as such." *Bennett*, 60 Ohio St. 3d at 109 (quoting *Kemper*).

Here, Plaintiff fails to state a claim upon which relief can be granted against Defendant Peled for the following reasons: she didn't personally detain Plaintiff, Israeli *judges* did (Compl.

36

¶¶9, 25); any detention was lawful under the laws of Israel; and any confinement was not within a limited area. Plaintiff asserts that "the entire state of Israel became the site of plaintiff's involuntary detention." (Compl. ¶94). Even if an entire nation can be considered "restraint" or "imprisonment," Plaintiff expressly admits that the State of Israel and its legal proceedings caused the "restraint," not Defendant Peled. *Id*. ¶¶9, 95. To be liable for false imprisonment the defendant must have intentionally confined the plaintiff within a limited area, for any appreciable time, without lawful privilege or the plaintiff's consent. *Feliciano*, 50 Ohio St. 2d at 71. Confinement consists of a "total detention or restraint upon [the plaintiff's] freedom of locomotion, imposed by force or threats." *Toledo v. Lowenberg*, 99 Ohio App. 165, 167 (6th Dist. 1955). If a plaintiff does not offer any proof of confinement, then the cause of action fails as a matter of law. See, e.g., *Mullins v. Rinks, Inc.*, 27 Ohio App. 2d 45, 48 (12th Dist. 1971); see also *Witcher v. City of Fairlawn*, 113 Ohio App. 3d 214, 217 (9th Dist. 1996). The entire State of Israel does not appear to satisfy the requirement that Plaintiff was confined "within a limited area" as contemplated in case law.

Moreover, Plaintiff asserts that Defendant Peled's participation in the "restraint" was her initiation of legal proceedings in Israel (Compl. ¶¶25, 93, 95)—in which the Israeli courts issued the lawful "no exit" order under Israeli law of which Plaintiff complains (*Id*. ¶9). Plaintiff was and is aware that the United States State Department issues a travel advisory to Israel—which he includes as an image in his Complaint—stating that "[c]ivil and religious courts in Israel actively exercise their authority to bar certain individuals, including nonresidents, from leaving the country until debts or other legal claims against them are resolved." *Id*. ¶104; *see also* https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/IsraeltheWestBankandGaza.html?wcmmode=disabled. Defendant Peled did not engage in any act that actually and physically "detained" Plaintiff; any alleged "detention"

37

within the State of Israel was done lawfully by the State of Israel and/or its court system, not Defendant Peled. Because Defendant Peled did not unlawfully personally and physically detain Plaintiff in a limited area, Plaintiff does not state a claim for which relief can be granted and it must fail.

## CONCLUSION

For all of the reasons set forth above, Defendant Peled respectfully requests that this Honorable Court dismiss Plaintiff's Complaint because his claims fail based on a: (1) lack of subject matter jurisdiction (Hague Convention, claims seeking child custody and child support, Plaintiff's apparent claims related to alleged violations of federal criminal statutes, and the PKPA), (2) lack of personal jurisdiction (Plaintiff's state law tort claims), and (3) failure to state claims upon which relief can be granted (Hague Convention, PKPA, federal criminal statutes, anti-suit injunctive relief, and the state law tort claims). Moreover, if this Court dismisses Plaintiff's federal question jurisdiction claims (Hague Convention/ICARA, and arguably the PKPA, federal criminal statutes, and anti-suit injunctive relief), it follows that this Court must also dismiss all other supplemental jurisdiction claims that Plaintiff raises in his Complaint.

Respectfully submitted,

**ZASHIN LAW, LLC**

*/s/ Christopher R. Reynolds*
**CHRISTOPHER R. REYNOLDS (0082107)**
5900 Landerbrook Drive, Suite 280
Landerbrook Corporate Center 1
Cleveland, Ohio 44124
E: crr@zashinlaw.com
P: 216-480-3001
F: 216-480-3002

Attorney for Defendant,
**YAEL PELED**

38