IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ITZIK PELED, | : | |
| | : | Case No. 2:23-cv-2224 |
| **Plaintiff,** | : | |
| | : | Judge Algenon L. Marbley |
| v. | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| YAEL PELED, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before this Court on Defendant Yael Peled's Motion to Dismiss (ECF No. 59). For the reasons set forth below, the motion is **GRANTED**.

**I.    BACKGROUND**

In July 2023, Plaintiff, proceeding *pro se*, filed a Complaint against his wife, Yael Peled; four Israeli officials; the State of Israel ("Israeli Defendants"); as well as Antony Blinken, the former United States Secretary of State; and Thomas R. Nides, the former United States Ambassador to Israel ("Federal Defendants"). (ECF No. 1). The claims arise from events surrounding Yael's alleged disappearance with the couple's children during a vacation in Israel. (*Id*.). This Court granted the motions to dismiss filed by both the Israeli and Federal Defendants, thereby dismissing all defendants except for Ms. Peled. (ECF No. 64). Presently before the Court is Yael's motion to dismiss, which is now ripe for adjudication. (ECF No. 59).

According to the Complaint, Plaintiff and Yael were married and resided in Ohio with their three minor children. (*Id*. ¶ 1). In December 2020, the family traveled to Israel for what was intended to be a temporary visit. Plaintiff alleges that, at the conclusion of the trip, Yael disappeared with the children and obtained a "no exit order" that prevented Plaintiff from leaving

Israel for a period of approximately 22 months—from January 14, 2021 until his eventual "escape" on October 20, 2022. (*Id.*).

While in Israel, on February 9, 2021, Plaintiff initiated proceedings in the civil family court in Tel Aviv pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), seeking the return of his children. (*Id.* ¶ 28). Plaintiff alleges that on March 24, 2021, the judge found in Plaintiff's favor, but on April 14, 2021, the Israeli Court of Appeals reversed that judgment, finding that Plaintiff acquiesced to the retention of the children by entering into temporary visitation negotiations with Yael. (*Id.* ¶¶ 31-32). The Israeli Supreme Court subsequently denied further review. (*Id.* ¶ 33). Plaintiff maintains that Yael deliberately manipulated him into entering the temporary visitation agreement, only to later characterize it as acquiescence. (*Id.* ¶¶ 1, 2).

During the pendency of the Hague Convention petition in Israel, Plaintiff filed a Complaint for Custody, Support, and Visitation and a Motion for Emergency Custody in the Franklin County Court of Common Pleas. (*Id.* ¶ 30). On January 21, 2022, the Ohio court found that it retained jurisdiction over parental rights and responsibilities regarding the minor children. (*Id.* ¶ 35). The case was later dismissed on May 24, 2022, after the court found that service was not perfected on Yael and that the rabbinical court in Israel was a more appropriate forum. (*Id.* ¶ 38). Plaintiff's appeal of that decision was unsuccessful. (*Id.*).

Plaintiff further alleges that, in July 2022, he was ordered to pay $2,200 per month in retroactive child support, that arrest warrants were issued to enforce compliance, and that his access to the children was severely limited. (*Id.* ¶ 38). He asserts that his parental rights were effectively terminated and that he is now "completely alienated from his children" and entangled in legal proceedings in both the Rabbinical Court and the Family Court of Tel Aviv. (*Id.* ¶ 2). He

was allegedly ordered to return to Israel to attend a child support trial under threat of a default judgment. (*Id*. ¶ 41).

Plaintiff brings various causes of action against Yael including claims of abduction, entitlement to compensation for kidnapping his children; anti-suit; loss of filial consortium; intentional infliction of emotional distress; and illegal confinement. (ECF No. 1). Now before the Court is Ms. Peled's Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), arguing respectively that the Court lacks subject-matter jurisdiction, personal jurisdiction, and that Plaintiff has failed to state a claim upon which relief may be granted. (ECF No. 59). Yael filed a motion seeking an extension of the page limit for her motion to dismiss. (ECF No. 56). Pursuant to local rule 7.2(a)(3), this Court generally disfavors memoranda exceeding twenty pages. *See* S.D. Ohio Civ. R. 7.2(a)(3). Out of an abundance of caution and in order to address fully and adequately the allegations set forth in Plaintiff's Complaint, Yael requested leave to file a memorandum not to exceed forty pages. (ECF No. 56). Upon a showing of good cause, this Court **GRANTS** the motion to extend the page limit. Accordingly, the motion to dismiss (ECF No. 59) is now ripe for adjudication.

## II. STANDARD OF REVIEW

Where a defendant challenges the existence of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction to avoid dismissal. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack is a challenge to the sufficiency of a complaint, and, when considering the motion, the court must view the material allegations of that complaint as true and construe them in the light most

3

favorable to the nonmoving party. *Id*. A factual attack is a challenge to the factual existence of subject matter jurisdiction. *Id*. No presumptive truthfulness applies to the factual allegations. *Moir*, 895 F.2d at 269. The district court is free to weigh the evidence to assure itself of its ability to hear the suit. *Golden v. Gorno Bros., Inc*., 410 F.3d 879, 881 (6th Cir. 2005).

Like its 12(b)(1) counterpart, Rule 12(b)(2) allows a defendant to challenge the court's jurisdiction over the person. *See generally* Fed. R. Civ. P. 12(b)(2). When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation omitted). Making such a showing nonetheless requires the plaintiff to "establish[] with reasonable particularity sufficient contacts between [defendant] and the forum state." *Id*. (quotation omitted). When ruling on a motion to dismiss for lack of jurisdiction, "the court will not consider facts proffered by the defendant that conflict with those by the plaintiff, and will construe the facts in the light most favorable to the nonmoving party." *Id*. (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005), citing *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433-34 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the standard is liberal, Rule

4

12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 548.

Moreover, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *See Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). With this less stringent standard, basic pleading essentials are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). To survive, a complaint must contain sufficient facts that if were to be true, would plausibly state a claim upon which relief can be granted.

### III. LAW AND ANALYSIS

Given the lack of clarity in Plaintiff's Complaint, both this Court and Defendant Yael were left uncertain as to the precise federal causes of action asserted against her. (ECF No. 59 at 3, 18). In his response to the motion to dismiss, Plaintiff clarifies that his claims are predicated upon the Hague Convention, the International Child Abduction Remedies Act ("ICARA"), the International Parental Kidnapping Crime Act ("IPKCA"), and this Court's diversity jurisdiction. (ECF No. 62 at 1). The Court will address each asserted basis for relief in turn.

#### A. Hague Convention and ICARA

Plaintiff brings claims under the Hague Convention and its implementing legislation, ICARA, 22 U.S.C. § 9001-9011. The Hague Convention seeks to "'secure the prompt return of children wrongfully removed to or retained in any Contracting State' and 'to ensure that the rights

of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Abbott v. Abbott*, 560 U.S. 1, 8 (2010) (quoting Hague Convention Art. 1). "The Convention 'is generally intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'" *Panteleris v. Panteleris*, 601 F. App'x 345, 347 (6th Cir. 2015) (quoting *Friedrich v. Friedrich,* 78 F.3d 1060, 1064 (6th Cir. 1996)). Under the Convention, a child abducted in violation of "rights of custody" must be returned to the child's country of habitual residence, unless certain exceptions apply. *Id*. (citing *Abbott*, 560 U.S. at 5).

To prevail on a claim for "wrongful removal" under the Convention, a petitioner must demonstrate by a preponderance of the evidence that: (1) the respondent removed the child from the child's habitual residence; and (2) the petitioner was exercising custody rights under the law of the child's habitual residence at the time of the removal. *Id*. at 348; *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993); *see also Minette v. Minette*, 162 F. Supp. 3d 643, 645 (S.D. Ohio 2016); 22 U.S.C. § 9003(e)(1)(A).

Yael moves to dismiss Plaintiff's claims under the Hague Convention and ICARA on the grounds of lack of subject matter jurisdiction. (ECF No. 59 at 14). ICARA provides that "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 42 U.S.C. § 11603(b).

While the Sixth Circuit has observed that "a court in the abducted-to nation has jurisdiction to decide the merits of an abduction claim," *Friedrich v. Friedrich*, 78 F.3d 1060, 1063-1064 (6th

6

Cir. 1996) (citations omitted), it is unclear whether jurisdiction may also exist in the country of the child's habitual residence when the child is no longer located there at the time of filing.

Courts are split on whether the requirement in 22 U.S.C. § 9003(b)—that a court be "authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed"—constitutes a matter of subject-matter jurisdiction or merely a venue requirement. For example, in *Olagues v. Kousharian*, the Ninth Circuit upheld dismissal for lack of jurisdiction because the children were in New Zealand at the time of filing. 177 F. App'x 537, 538 (9th Cir. 2006). Similarly, in *Espinoza v. Mattoon*, the court dismissed an ICARA claim where the child was physically located in Canada. 2009 WL 1919297, at *2 (W.D. Wash. June 30, 2009). Other district courts have reached the same conclusion, emphasizing that jurisdiction under ICARA exists "only where the children are physically present at the time of filing." *Gee v. Hendroffe*, No. 13-CV-1582-JCM-NJK, 2014 WL 60325, at *5 (D. Nev. Jan. 7, 2014); *see also Flores Perla v. Perla Velasquez*, 2016 WL 3878495, at *4 (D. Md. July 18, 2016) (noting "courts have stated that only the court where the child is located has jurisdiction"); *Wolski v. Garza-Wolski*, No. 216CV02550JADNJK, 2016 WL 8677348, at *2 (D. Nev. Nov. 16, 2016), *report and recommendation adopted*, No. 216CV02550JADNJK, 2017 WL 1281877 (D. Nev. Mar. 31, 2017) ("Because Petitioner's son was not physically located in Nevada at the time Petitioner initiated this case, the Court lacks jurisdiction to hear his ICARA claim.").

Recently, the Second Circuit addressed this question and concluded that § 9003(b) pertains to venue, not jurisdiction. *Tereshchenko v. Karimi*, 102 F.4th 111, 126 n.9 (2d Cir. 2024). In *Tereshchenko*, the plaintiff filed his petition in the Southern District of New York after determining that the defendant and the children were likely residing in Manhattan. *Id*. at 120. The court

7

explained that when interpreting a treaty such as the Hague Convention, a court must consider "two levels of judicial power:" treaty jurisdiction and domestic jurisdiction. *Id*. at 125–26.

With respect to treaty jurisdiction, the court found that the Hague Convention specifies jurisdiction in Articles 8 and 30. *Id*. at 125. Under Article 8, a person "claiming that a child has been removed or retained . . . may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child." Convention, Art. 8. According to Article 30, an application may be submitted to either the Central Authorities themselves or "directly to the judicial or administrative authorities of a Contracting State." *Id.* at Art. 30.

As for domestic jurisdiction, the Second Circuit found that jurisdiction is limited by Article III and any other applicable statutory requirements, namely ICARA in this context. *Tereshchenko*, 102 F.4th at 126. The court noted that in its jurisdictional provision, ICARA provides that "[t]he courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention." *Id*. (quoting 22 U.S.C. § 9003(a)). The court emphasized that this was the only jurisdictional limit, as no other provisions "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id*. (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (explaining that a statutory element is presumptively non-jurisdictional if it does not appear in a statute's jurisdictional provision)). The defendant in *Tereshchenko* argued that the district court lacked subject matter jurisdiction because the plaintiff consented to removal. The court held that "[n]either the Convention's jurisdictional provisions nor our own domestic jurisdictional law requires that the removal be wrongful or without consent. The treaty requires only that the children be habitually resident in a Contracting State (as the children are here) and that the court hearing the petition be one in a Contracting State (as the district court is here). As

8

for domestic law, ICARA explicitly authorizes the district court to hear the petition, and nothing suggests the presence of other constitutional or statutory jurisdictional defects." *Id*.

This Court finds the reasoning in *Tereshchenko* persuasive. Nevertheless, a key factual distinction in this case precludes Plaintiff's claims under ICARA: the children were not located in the United States when the petition was filed. Thus, regardless of whether § 9003(b) is jurisdictional or venue-related, it still requires that the petition be filed in the location where the child is physically present at the time of filing. Here, the children were not located in Ohio—or anywhere in the United States—when Plaintiff initiated this action. *See, e.g.*, *Oviedo v. Rivera*, No. 1:22-CV-214, 2023 WL 2431819, at *4 (S.D. Ohio Mar. 9, 2023) ("However, regardless of whether Section 9003(b) is a jurisdictional or venue provision, Section 9003(b) states that the only place where a court 'is authorized to exercise its jurisdiction" is "in the place where the child is located at the time the petition is filed.'").

While courts are divided on whether § 9003(b)'s requirement is jurisdictional or venue-related, the prevailing view suggests that a child's physical presence in the forum at the time of filing is essential. Even under the view that § 9003(b) concerns venue rather than jurisdiction, Plaintiff's petition fails to satisfy this statutory requirement. Because the children were not located in the United States when this petition was filed, this Court either lacks subject matter jurisdiction or, alternatively, is not authorized to exercise its jurisdiction under ICARA. Accordingly, dismissal is appropriate.[1]

---

[1] Yael also argues that dismissal is warranted because Plaintiff's petition was filed beyond the one-year period set forth in Article 12 of the Hague Convention. (ECF No. 59 at 17). Plaintiff argues that equitable tolling should apply. (ECF Nos. 1 ¶¶ 3, 59; 62 ¶ 17). The Supreme Court, however, has held that equitable tolling does not apply to the one-year period in the Hague Convention. *Lozano v. Alvarez*, 572 U.S. 1, 18 (2014). That said, the Court also made clear that the expiration of the one-year period does not automatically bar a return remedy. Rather, Article 12 provides that after the one-year mark, "the court 'shall also order the return of the child, unless it is demonstrated that the child is now settled.'" *Id*. at 14–15 (quoting Hague Convention, Art. 12).  Accordingly, filing a petition beyond this one-year period does not alone warrant dismissal under Rule 12(b)(6). Instead, it requires the court to assess whether the children are "settled."

### B.  IPKCA and Other Federal Statutes

Plaintiff also asserts that Yael is subject to liability under the International Parental Kidnapping Crime Act, 18 U.S.C. § 1204 ("IPKCA"). (ECF Nos. 1 ¶¶ 58, 60; 62 ¶ 2).  The IPKCA states that "[w]hoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights" is guilty of international parental kidnapping. 18 U.S.C. § 1204(a). This provision effectively criminalizes the intent to obstruct the lawful exercise of existing parental rights. Plaintiff also briefly references violation of 18 U.S.C. § 1073—a criminal statute regarding flight to avoid prosecution or giving testimony. Yael moves to dismiss the IPKCA claims, as well as any other potential claim under a federal criminal statute, for failure to state a claim on the basis that no private cause of action exists. (ECF No. 59 at 17).

Plaintiff fails to state a claim for relief under the criminal statutes cited in his Complaint. It is well established that there is generally no private cause of action for the violation of a federal criminal statute. *See Ohlendorf v. United Food & Com. Workers Intl. Union, Loc*. 876, 883 F.3d 636, 642 (6th Cir. 2018) ("We do not casually, or for that matter routinely, imply private rights of action in favor of the victims of violations of criminal laws" rather "[q]uite the opposite is true . . . ."); *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Although Plaintiff cites criminal statutes, he fails to identify a provision authorizing a private right of action.

Plaintiff also references the Parental Kidnaping Prevention Act ("PKPA") in his complaint, asserting that this Court should issue an arrest warrant against Yael due to her violation of the

---

Nevertheless, because this Court has already found that dismissal of the Hague Convention and ICARA claims is appropriate based on the children's physical location outside the United States at the time of filing, the timeliness issue is ultimately immaterial.

10

PKPA. (ECF No. 1 ¶ 60). The purpose of the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations. *Thompson v. Thompson*, 484 U.S. 174, 183 (1988). The Supreme Court acknowledged that the purpose was "not to create an entirely new cause of action. It thus is not compatible with the purpose and context of the legislative scheme to infer a private cause of action." *Id*. at 183, 187. Plaintiff has not identified, nor does the statute provide, any private right of action for violations of the PKPA.

While there are civil remedies available under other statutes, such as ICARA, these do not extend to the IPKCA, or the criminal statutes cited here. Plaintiff's attempt to rely on criminal statutes to assert private causes of action is without legal foundation.

Accordingly, because none of the cited criminal statutes provide a private right of action, Plaintiff's claims under the IPKCA and other criminal laws must be dismissed for failure to state a claim.

### C.  Child Custody-Related Claims

#### 1.  *Child Custody and Child Support*

In addition to the remedies sought under the Hague Convention, Plaintiff seeks an order finding that he is the sole custodian of the three minor children and is entitled to child support. (ECF No. 1 ¶ 16). Yael requests dismissal because this Court lacks subject-matter jurisdiction. (ECF No. 59 at 22).

Federal courts typically cede domestic relations matters to state courts. The domestic relations exception "does not deprive federal courts of jurisdiction to adjudicate a claim . . . unless a plaintiff positively sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing divorce, alimony, or child-custody decree." *Alexander v. Rosen*, 804 F.3d 1203, 1205–06 (6th Cir. 2015) (quoting *Chevalier v. Estate of Barnhart,* 803 F.3d 789, 797 (6th Cir. 2015)). This domestic relations exception to federal jurisdiction is narrow. *See Ankenbrandt*

11

*v. Richards,* 504 U.S. 689, 701–04 (1992). Nevertheless, the claims asserted here fall within its confines. Here, Plaintiff seeks precisely what the exception precludes. He does not merely raise federal statutory claims incidentally related to custody—he affirmatively asks this Court to declare him the sole custodial parent and to award him child support.

Accordingly, Plaintiff's claims relating to child custody and support fall within the domestic relations exception to federal jurisdiction and must be dismissed for lack of subject matter jurisdiction.

### 2. Anti-suit

Plaintiff also requests that this Court issue an anti-suit injunction enjoining Yael from continuing to prosecute the various legal proceedings she initiated against him during his travels to Israel. (ECF No. 1 ¶¶ 16, 65–73). According to the Complaint, Yael is pursuing three separate actions: (1) a matter before the Civil Family Court seeking permanent child support (*Id.* ¶ 65); (2) a proceeding in the Rabbinical Court in which she seeks a divorce decree, distribution of property, and sole legal and physical custody (*Id.* ¶ 66); and (3) a claim before the Child Support Collection Unit to collect an alleged child support "debt" (*Id.* ¶ 67).

An anti-suit injunction is an extraordinary equitable remedy that allows one court to "control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions." *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1352 (6th Cir.1992). While a federal court may issue foreign antisuit injunctions, "[c]omity dictates that [these injunctions] be issued sparingly and only in the rarest of cases." *Id.* at 1353–54. In determining whether to grant an anti-suit injunction, courts consider whether the injunction is necessary to protect the federal court's jurisdiction, or if allowing the foreign litigation to continue would allow a party "to evade the forum's important policies." *Answers in Genesis of Kentucky,*

*Inc. v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, 471 (6th Cir. 2009) (quoting *Gau Shan*, 956 F.2d at 1355, 1357).

Here, Plaintiff seeks to enjoin foreign proceedings that concern domestic relations—matters that are traditionally reserved to state courts. As explained above, this Court lacks jurisdiction over such issues in this case. Accordingly, an anti-suit injunction is neither necessary to protect this Court's jurisdiction nor to preserve any important policies of the federal forum.

Therefore, the issuance of an anti-suit injunction under these circumstances would be both unwarranted and inappropriate.

### D. State-Law Tort Claims

Plaintiff also asserts various state law tort claims including Loss of Filial Consortium (ECF No. 1 ¶¶ 64, 74-81), Intentional Infliction of Emotional Distress (*Id.* ¶¶ 63, 64, 82-91), and Illegal Confinement (*Id.* ¶¶ 92-98).

#### 1. Subject Matter Jurisdiction

Yael argues that, since this Court lacks subject-matter jurisdiction over any federal question claim(s), all supplemental jurisdiction claims must be dismissed. (ECF No. 59 at 19). Generally, district courts should decline to exercise supplemental jurisdiction over state law claims when all federal law claims have been dismissed from the case before trial. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008).

Plaintiff, however, asserts that diversity jurisdiction exists. Diversity jurisdiction requires complete diversity of citizenship between parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a)(1). Here, Plaintiff is domiciled in Ohio, while Yael is alleged to be domiciled in Israel. (ECF No. 59 at 12, 28). Additionally, the amount in controversy, $5,000,000, far exceeds the $75,000 threshold.

## 2. Personal Jurisdiction

Regardless of whether this Court has jurisdiction pursuant to diversity of citizenship, dismissal is warranted because this Court lacks personal jurisdiction over Yael with respect to the claims asserted.

In diversity actions, a federal court applies the forum state's law to determine personal jurisdiction. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012). Under Ohio law, personal jurisdiction exists if two requirements are satisfied: (1) Ohio's long-arm statute confers jurisdiction, and (2) the requirements of the federal due process clause of the Fourteenth Amendment are met. *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000). A party seeking to assert personal jurisdiction bears the burden to show that jurisdiction exists. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). The Sixth Circuit explains that "[t]he weight of [the] burden . . . depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue . . . ." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Where, as here, a court relies solely on the parties' written submissions, it must consider the pleadings and affidavits in the light most favorable to the plaintiff, and the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Id.*

### a. Ohio's Long-Arm Statute

Ohio's long-arm statute grants a court personal jurisdiction over a nonresident if its conduct falls within one of the nine bases for jurisdiction listed under the statute. *See* Ohio Rev. Code § 2307.382. The provisions most relevant here are subsections (A)(6) and (A)(8), which provide for jurisdiction over a person:

> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;
> . . .
> (8) Having an interest in, using, or possessing real property in this state . . . .

§ 2307.382 (A)(6), (8). Plaintiff contends that Yael's actions—specifically, the initiation of legal proceedings in Israel—gave rise to claims of loss of filial consortium, intentional infliction of emotional distress, and illegal confinement. These alleged harms, though resulting from actions occurring abroad, were allegedly felt by Plaintiff while domiciled in Ohio. Plaintiff also alleges that Defendant has an interest in real property located in Ohio. (ECF No. 1 ¶ 18).

Yael argues that Plaintiff cannot satisfy O.R.C. §2307.382(A)(6) because the underlying conduct consists of legal actions taken in Israel, initiated in Israeli courts, and were not done with the "purpose of injuring persons" in Ohio. Instead, she argues the conduct reflects routine participation in family law proceedings—namely, seeking divorce and related relief—and also includes a Hague Convention petition initiated by Plaintiff himself. (ECF No. 59 at 30).

While Plaintiff's allegations against Yael are based solely on her initiation of and participation in those legal actions and allege that they caused him harm in Ohio (ECF No. 1 ¶¶ 63, 64, 74-98), these claims fall short of satisfying the requirements of Ohio's long-arm statute. The record does not plausibly support an inference that Yael committed any tortious act outside Ohio "with the purpose of injuring persons" in this state, as required under § 2307.382(A)(6). Instead, as alleged in the Complaint, Yael's conduct was directed at resolving family law disputes in her country of residence, not targeting Plaintiff in Ohio.

Additionally, although Plaintiff asserts that Yael maintains an "interest in real property" located in Ohio, he fails to allege any connection between that property and the tort claims at issue. Section 2307.382(A)(8) requires more than the mere ownership or use of Ohio real estate; there must be a nexus between that interest and the cause of action. *See, e.g.*, Bh*amidipati v. Kaptur*,

15

2025 WL 1725780, *4 (S.D. Ohio June 20, 2025) ("[T]he sole nexus connecting Defendant to Ohio is that Plaintiff, a resident of the state of Ohio, instructed Defendant Chase Bank to transfer funds from Ohio to Defendant CMB in Hong Kong. This act alone fails to satisfy the requirements under Ohio's long arm statute."). Plaintiff has not established this connection.

Accordingly, the Complaint fails to show that Yael's conduct falls within the scope of Ohio's long-arm statute.

### b. Federal Due Process

Even if the long-arm statute were satisfied, Plaintiff has not demonstrated that the exercise of jurisdiction over Yael would comply with due process. The Due Process Clause requires that defendant have sufficient "minimum contact[s]" with the forum state such that a finding of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989))

There are two types of personal jurisdiction under due process principles: general jurisdiction, when the suit does not arise from a nonresident defendant's contacts with the forum state; and specific jurisdiction, where the suit does arise from a nonresident defendant's contacts with the forum state. *Id.* at 712-13. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A person's "domicile" is his or her permanent and principal home, to which he or she intends to return whenever away. *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 343 (6th Cir. 1997)

Here, Plaintiff alleges that Yael resided in Ohio before the events giving rise to this case took place. (ECF No. 1 ¶ 18). The allegations in the pleadings, however, establish that Yael did not plan, or intend, to return to Ohio. To the contrary, her actions—including filing for divorce in Israel, seeking custody orders, and defending against Plaintiff's Hague Convention petition—evince an intent to remain in Israel with the children. (ECF No. 1 ¶¶ 26–28, 50, 66). Accordingly, the Court finds that general jurisdiction is lacking.

Similarly, Plaintiff does not establish specific jurisdiction. A finding of specific jurisdiction requires that three elements be satisfied: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). All alleged acts by Yael, including the pursuit of custody, divorce, and child support proceedings, took place in Israel. Both parties were present in Israel at the relevant times. Plaintiff has not identified any specific conduct by Yael that occurred in or was directed toward Ohio. Accordingly, there is no purposeful availment, and the claims do not arise from any activity in Ohio.

Because Plaintiff has not shown that Yael's conduct satisfies Ohio's long-arm statute or the constitutional requirements of due process, this Court lacks personal jurisdiction over her. Dismissal is therefore warranted.

## IV. CONCLUSION

For the reasons discussed above, Defendant Yael Peled's Motion to Dismiss (ECF No. 59) and the motion for an extension on the page limit of the motion to dismiss (ECF No. 56) are **GRANTED**. Accordingly, this case is **DISMISSED.**

    **IT IS SO ORDERED.**

                                               **ALGENON L. MARBLEY**
                                               **UNITED STATES DISTRICT JUDGE**

**DATED:  September 23, 2025**